

U.S. Department of Justice

United States Attorney
Eastern District of New York

AAS/DKK

271 Cadman Plaza East
Brooklyn, New York 11201

August 31, 2017

By Hand Delivery and ECF

The Honorable M. David Weisman
United States Magistrate Judge
Northern District of Illinois
219 South Dearborn
Chicago, Illinois 60604

      Re:   United States v. Dilshod Khusanov
             Criminal Docket No. 17-475

Dear Judge Weisman:

      Later today, defendant Dilshod Khusanov is scheduled to be arraigned before Your Honor on the above-referenced indictment. For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because there is a presumption of detention due to the nature of the charges, and because the defendant presents a danger to the community and a risk of flight.[1]

I.    Background

      On August 29, 2017, a grand jury in the Eastern District of New York returned an indictment charging Khusanov with one count of conspiring and one count of attempting to provide material support to the Islamic State of Iraq and al-Sham ("ISIS") and Al-Nusrah Front, both foreign terrorist organizations, each in violation of 18 U.S.C. § 2339B.

    A.  ISIS

      ISIS is a foreign terrorist organization that, since 2013, has claimed credit for numerous terrorist activities, including seizing Mosul, a city in northern Iraq, launching rocket attacks on eastern Lebanon in March 2014, the November 2015 terrorist attacks in Paris, France, and the March 2016 suicide bombings in Brussels, Belgium, among many

---

[1] Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

others. These terrorist activities are part of ISIS's broader goal of forming an Islamic state or "caliphate"[2] in Iraq and Syria. On or about October 15, 2004, the United States Secretary of State designated al- Qaeda in Iraq (AQI), then known as Jam 'at al Tawid wa' al-Jahid, as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant (ISIL) as its primary name. The Secretary of State also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham ("ISIS" – which is how the FTO will be referenced herein), The Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furquan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO.

    B. Al-Nusrah Front

On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.

On December 11, 2012, the Secretary of State amended the designation of AQI to include the following aliases: al-Nusrah Front ("ANF"), Jabhat al-Nusrah, Jabhet al-Nusra, The Victory Front, and Al-Nusrah Front for the People of the Levant.

On May 15, 2014, the Secretary of State, in response to the evolving nature of the relationships between ANF and AQI, amended the FTO designation of AQI to remove all aliases associated with al-Nusrah Front. Separately, the Secretary of State then designated al-Nusrah Front, also known as Jabhat al-Nusrah, also known as Jabhet al-Nusra, also known as The Victory Front, also known as Al-Nusrah Front for the People of the Levant, also known as Al-Nusrah Front in Lebanon, also known as Support Front for the People of the Levant, and also known as Jabaht al-Nusra li-Ahl al-Sham min Mujahedi al-Sham fi Sahat al-Jihad, as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224. To date, ANF remains a designated FTO.

    C. The Offense Conduct

Since the summer of 2014, the FBI has been investigating a domestic network based in New York and elsewhere that has been providing financial support for individuals

---

[2] "Caliphate" is a term that can be used to refer to ISIS's self-proclaimed system of religious governance, with Abu Bakr al-Baghdadi as the caliphate's self-proclaimed leader.

2

who seek to travel to the Middle East to join ISIS or ANF. Khusanov, like his co-conspirators, was a member of the domestic support network for such individuals. He donated his own money, and he worked with his co-conspirators to raise money from others that was intended to be used to help other individuals to travel to Syria to join and fight on behalf of ISIS or ANF.

One of Khusanov's co-conspirators, Abdurasul Juraboev, first came to the attention of investigators during the summer of 2014 after he made a post on an Uzbek-language website that propagates ISIS's terrorist ideology. In his post, Juraboev offered to engage in an act of martyrdom on U.S. soil on behalf of ISIS, such as killing the then President of the United States. In a subsequent interview with FBI agents, Juraboev told the agents that, if ordered to do so by ISIS, he would conduct an attack in the United States. Juraboev also confirmed that he had pledged allegiance to ISIS.

Like Juraboev, co-conspirator Saidakhmetov expressed his support for ISIS on social media. For example, on or about August 4, 2014, Saidakhmetov posted a message to the same website in which he referenced a video containing footage of multiple individuals pledging allegiance to ISIS and showing mass executions by ISIS of Iraqi forces captured during ISIS's takeover of Mosul, Iraq. Saidakhmetov wrote, "Allohu Akbar[3] I was very happy after reading this, my eyes joyful so much victory."

The investigation subsequently revealed that Juraboev and Saidakhmetov devised a plan to travel to Syria, via Turkey, for the purpose of joining ISIS and engaging in violent jihad. Juraboev and Saidakhmetov ultimately purchased airline tickets to travel from the United States to Turkey. On February 25, 2015, Saidakhmetov was arrested while trying to board a flight from John F. Kennedy International Airport ("JFK Airport") to Istanbul, Turkey. Juraboev was scheduled to leave the United States in March 2015.[4]

Evidence obtained during the course of the investigation has revealed that the defendant worked closely with co-conspirators Abror Habibov, Akmal Zakirov and others to help fund Saidakhmetov's efforts to travel to Syria to join ISIS. In particular, the defendant discussed with Habibov and Zakirov providing his own money and raising money from others to fund Saidakhmetov's travel. In the eight days leading up to Saidakhmetov's scheduled departure from JFK Airport, multiple individuals, including the defendant, transferred approximately $2,400 in total into Zakirov's personal bank account. Evidence obtained during the investigation also indicates that those funds were intended to be provided to Saidakhmetov.

---

[3] *Allahu Akbar* is an Arabic expression meaning, "God is the greatest."

[4] Juraboev is not included as a co-defendant in the third superseding indictment because he pleaded guilty on August 14, 2015, to conspiring to provide material support to ISIS.

Although Saidakhmetov was apprehended before he could travel to Syria to wage violent jihad, the investigation has identified multiple persons who travelled successfully to Syria to join and fight with either ISIS or ANF. To date, four individuals in addition to Juraboev and Saidakhmetov have been charged in a related case in the Eastern District of New York with funding Saidakhmetov's efforts: Habibov, Kasimov, Azizjon Rakhmatov, and Zakirov. Juraboev pleaded guilty on August 14, 2015, Saidakhmetov pleaded guilty on January 19, 2017, and Habibov pleaded guilty on August 29, 2017, all to a charge of conspiring to provide material support to ISIS. See United States v. Juraboev, 15-CR-95 (S-3) (WFK) (E.D.N.Y.).

II. Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The charges against defendant in the indictment carry a presumption of detention under the Bail Reform Act. Specifically, where a defendant is charged with certain enumerated offenses, the Bail Reform Act provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Such presumption is applicable where "the judicial officer finds that there is probable cause to believe that the [defendant] committed" any of the following offenses: "(C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(e)(3). Section 2332b(g)(5)(B), in turn, lists a number of terrorism offenses, including 18 U.S.C. § 2339B, which carries for the time period of the charges in this case a maximum term of 15 years' imprisonment. Therefore, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond.

Beyond the presumption of detention, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, all of these factors weigh heavily against pretrial release.

4

III.     The Court Should Enter a Permanent Order of Detention

As set forth above, there is a presumption that no condition or combination of conditions will permit the defendant to be released on bond. Moreover, the factors to be considered in the detention analysis show that the defendant presents both a significant danger to the community and a substantial risk of flight if released on bond. Accordingly, the Court should enter a permanent order of detention pending trial.

A.      The Nature and Circumstances of the Offense Charged

The charged offenses are extremely serious. The defendant is charged with attempting and conspiring to provide material support to ISIS and ANF, both foreign terrorist organizations that are responsible for numerous acts of violence, including mass executions of Iraqi forces, as well as beheadings and an immolation of captives. The charged offenses involve efforts by the defendant to help others fight and engage in terrorist activity on behalf of ISIS or ANF. In particular, the charged conduct involves the defendant's considerable efforts to provide financial assistance to Saidakhmetov in his goal of joining ISIS.

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence or a Federal crime of terrorism. See 18 U.S.C. § 3142(g)(1). The charged offenses fall within this category, confirming that Congress viewed these crimes as sufficiently serious to factor against release on bond.

Indeed, as set forth above, Congress recognized the seriousness of these charged offenses by specifically enumerating 18 U.S.C. § 2339B among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Even where a defendant can rebut this presumption, the Court is still required to give some weight to the presumption in the detention analysis, "keeping in mind that Congress has found that these offenders pose special risks" and that "a strong probability arises that no form of conditional release" will assure the defendant's return to court or adequately protect the community. United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (citation and internal quotation marks omitted).

In this case, the charged offenses carry a maximum total potential sentence of up to 30 years' imprisonment, and a Guidelines range of 360 months to life imprisonment. The prospect of a lengthy term of incarceration may reasonably incentivize the defendant to flee and thus helps establish the defendant's status as a serious risk of flight. Indeed, as the defendant has sought to help multiple co-conspirators illegally travel to Syria to join ISIS or ANF, the government has no confidence that he would abide by any conditions of release. Instead, there is every reason to think that he will make efforts to flee from the United States so that he can avoid the prospect of a lengthy prison term.

B. The Weight of the Evidence

The weight of the evidence in this case is strong. The defendant's co-conspirators were captured in multiple electronic communications discussing the defendant's efforts to raise money for Saidakhmetov so that Saidakhmetov could join ISIS and purchase a weapon to fight with ISIS. In addition, bank records and surveillance footage document the defendant's transfer of money to Zakirov's personal bank account in the days leading up to Saidakhmetov's travel. Accordingly, this factor weighs in favor of a finding that the defendant is both a danger to the community and a flight risk.

C. The Defendant's History and Characteristics

The defendant's history and characteristics confirm that he is both a danger to the community and a substantial risk of flight. For example, the defendant is employed as a truck driver who frequently travels across the East Coast.

As noted above, the defendant is a danger to the community because of his support for terrorism and his assistance to and incitement of others to engage in acts of violence.

The defendant presents a substantial risk of flight given the hefty prison sentence that he faces of up to 30 years' incarceration with an effective Guidelines range of 30 years, the statutory maximum possible sentence. Also, the defendant is a citizen of Uzbekistan who has substantial familial ties to that country. Given the defendant's ties overseas and the prospect of a lengthy prison term, there is no reason for the defendant to remain in the United States to face trial. Were the defendant to flee the United States, he would have access to parts of the world from which the United States has limited ability to recapture or extradite him. Accordingly, the government respectfully submits that the defendant represents a substantial risk of flight if released on bond.

IV.     Conclusion

        For all of the foregoing reasons, the defendant should be detained pending trial.  The defendant is charged with an extremely serious offense, which carries a presumption of detention, and faces a potential sentence of up to 30 years' imprisonment.  The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.

        Respectfully submitted,

        BRIDGET M. ROHDE
        Acting United States Attorney

By:   /s/ Alexander A. Solomon
        Alexander A. Solomon
        Peter W. Baldwin
        Douglas M. Pravda
        David K. Kessler
        Assistant U.S. Attorneys
        (718) 254-7000

cc:     Clerk of Court (by ECF)