```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
                                             :
                                             :
             v.                              :      DECISION & ORDER
                                             :      17-CR-475 (WFK)
DILSHOD KHUSANOV,                            :
                                             :
                Defendant.                   :
-----------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:** Dilshod Khusanov ("Defendant") brings this emergency motion pursuant to 18 U.S.C. §§ 3142(c) and (f) seeking bond and his release from federal custody on a temporary basis during the COVID-19 crisis and for the balance of the case. Defendant raises three arguments in support of his motion: (1) his pre-trial detention has lasted approximately two years and six months and trial is not scheduled until October 2020; (2) discovery provided by the Government has substantially undermined the case against Defendant; (3) as a result of the COVID-19 outbreak, Defendant is at substantial risk because he is a chronic asthmatic; and (4) as a result of the outbreak, attorney-client communications have been limited and Defendant will not be able to adequately prepare for trial unless released. ECF No. 90. For the reasons discussed below, Defendant's Second Motion for Bond is DENIED.

## PROCEDURAL HISTORY

On August 29, 2017, Defendant was charged via indictment with Conspiracy to Provide Material Support to a Foreign Terrorist Organization ("FTO"), pursuant to 18 U.S.C. § 2339B(a)(1), and Attempt to Provide Material Support to a FTO, pursuant to 18 U.S.C. § 2339B(a)(1) and (2). ECF No. 1. Defendant faces a maximum sentence of 30 years' incarceration and thus a statutory presumption of detention. 18 U.S.C. § 3142(e)(3).

On November 9, 2017, this Court arraigned Defendant and issued an Order of Detention with respect to Defendant. ECF No. 13. The Court found there was a serious risk Defendant would not appear, there was a serious risk Defendant would endanger the safety of another or the community, he lacked substantial ties to the community, had no stable history of employment, and had not presented credible sureties to assure his appearance. *Id.* at 1.

1

Defendant made his first motion for bond on January 2, 2018.  ECF No. 15.  In his motion, Defendant argued he was only alleged to have provided a small amount of money to assist someone traveling abroad to join the Islamic State of Iraq and al-Sham ("ISIS").  *Id.* at 3.  He also argued against the weight of the evidence, for his strong ties to the community, and for a determination he was not a flight risk nor danger to the community.  *Id.* at 3–4.  In support of the motion, Defendant proposed a bail package including a $500,000.00 bond, secured by six persons among his friends and family, surrender of travel documents, GPS monitoring, and house arrest.  *Id.* at 4.

The Government opposed Defendant's first motion for bond.  ECF No. 16.  The Government proffered Defendant was a member of a domestic support network for individuals seeking to travel to the Middle East to join ISIS and the al-Nusrah Front ("ANF") since at least 2013.  *Id.* at 1–2.  The Government articulated an evidentiary basis to establish Defendant was a flight risk and a danger to the community.  *Id.* at 3.

At a bond hearing on January 10, 2018, this Court determined Defendant presented a high risk of flight and danger to the community.  ECF Minute Entry Jan. 10, 2018.  This Court also determined no condition or combination of conditions could assure Defendant's appearance and so denied bond.  *Id.*  Defendant appealed and the order of detention was affirmed by the Second Circuit.  *United States v. Khusanov*, 731 F. App'x 19, 23 (2d Cir. 2018).

## THE COVID-19 CRISIS

Beginning in late February 2020, a new viral infection, COVID-19 has swept into the United States.  Derrick Bryson Taylor, *A Timeline of the Coronavirus Pandemic*,  N.Y. Times (April 2, 2020), https://www.nytimes.com/article/coronavirus-timeline.html; E.D.N.Y. Admin. Order 2020-13 at 1 ("As of [March 30, 2020], "over 33,000 – in excess of 50% – of the more

than 59,000 confirmed cases of COVID-19 in New York State are in the boroughs of New York City and counties of Long Island that comprise the Eastern District of New York. These cases account for approximately 25% of the total number of confirmed cases nationwide to date."). Since arriving in the United States "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent." *United States v. Stephens*, 15-CR-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (Nathan, J.). The novel infection has been found to affect older individuals, and individuals with chronic respiratory illnesses more severely than healthy individuals, significantly increasing their risk of death. *People Who Need Extra Precautions*, Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fasthma.html (last visited Apr. 3, 2020); *People Who Are at Higher Risk for Severe Illness*, Ctr. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html.

In particular, prison populations have been identified as being a potential hotspot for outbreaks of the virus. Tom McParland, *Pressure Grows to Better Address Bail Applications as COVID-19 Hits NY Federal Jails*, N.Y. Law Journal (Mar. 25, 2020, 06:11 P.M.), https://www.law.com/newyorklawjournal/2020/03/25/pressure-grows-to-better-address-bail-applications-as-covid-19-hits-ny-federal-jails/; Emma Brown & Dalton Bennett *'Disaster waiting to happen': Thousands of inmates released as jails and prisons face coronavirus threat*, Washington Post (Mar. 25, 2020, 06:00 AM), https://www.washingtonpost.com/national/disaster-waiting-to-happen-thousands-of-inmates-released-as-jails-face-coronavirus-threat/

2020/03/24/761c2d84-6b8c-11ea-b313-df458622c2cc_story.html. Indeed, as of April 3, 2020, the Bureau of Prisons ("BOP") had 2 confirmed cases of COVID-19 among inmates and 5 confirmed cases among staff at the Metropolitan Detention Center in Brooklyn, NY ("MDC") as well as 4 confirmed cases among inmates and 7 confirmed cases among staff at the Metropolitan Correctional Center in Manhattan, NY ("MCC"). Letter from M. Licon-Vitale, Warden, MCC New York and D. Edge, Warden, MDC Brooklyn to the Honorable Roslynn R. Mauskopf (Apr. 3, 2020). Additionally, throughout the country the BOP has 138 confirmed cases of COVID-19 among inmates and 59 cases among staff. Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 6, 2020).

On March 13, 2020, the BOP issued a COVID-19 Action Plan to reduce the spread and transmission of the virus. Fed. Bureau of Prisons, Bureau of Prisons COVID-19 Action Plan (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp ("BOP Action Plan"). The BOP Action Plan suspended legal visits to inmates for 30 days but allowed for "case-by-case accommodation" at the local level and also specified "confidential legal calls will be allowed in order to ensure inmates maintain access to counsel, . . . If approved for an in-person visit, the attorney will need to undergo screening using the same procedures as staff." *Id.* On March 31, 2020, the BOP announced it was taking the additional step of securing all inmates "in their assigned cells/quarters to decrease the spread of the virus" for 14 days. Fed. Bureau of Prisons, COVID-19 Action Plan: Phase Five, Bureau of Prisons (Mar. 31, 2020, 06:30 P.M.), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. The MDC and MCC also prepared a list of inmates who may be at heightened risk due to the epidemic.

In response to the pandemic, Chief Judge Mauskopf of the Eastern District of New York issued an administrative order excluding time, under 18 U.S.C. §§ 3161(a)-(c), (h)(7)(A), in all

criminal matters through April 27, 2020. E.D.N.Y. Admin. Order No. 2020-06. Additionally, under the authority provided by section 15002(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Chief Judge Mauskopf authorized the use of video conferencing and telephone conferencing in, *inter alia*, detention hearings, arraignments, and misdemeanor pleas and sentencings in the Eastern District of New York. E.D.N.Y. Admin. Order No. 2020-13. Most recently, Chief Judge Mauskopf ordered the Wardens of the three prisons with pre-trial detainees for the Eastern District of New York to provide twice weekly, written status reports concerning "the incidence of infection of COVID-19 at each facility and the measures undertaken to mitigate the spread of COVID-19 within each facility." E.D.N.Y. Admin. Order 2020-14.

## DEFENDANT'S SECOND MOTION FOR BOND

On March 26, 2020, Defendant filed a second motion for bond on an emergency basis under 18 U.S.C. §§ 3142(c), (f). Def.'s Mot. for Bond, ECF No. 90, at 1 ("Def. Mot."). Defendant raises four grounds for relief: (1) the 30 months of pre-trial detention, if Defendant is held in custody until his trial in October 2020, would violate his due process rights; (2) discovery provided by the Government has substantially undermined the case against Defendant; (3) as a result of the COVID-19 outbreak, Defendant is at substantial risk because he is a chronic asthmatic; and (4) as a result of the outbreak, attorney-client communications have been limited and Defendant will not be able to adequately prepare for trial unless released. Def. Mot. at 1–2. Defendant proposes substantially the same bail package as was included in his first motion for bond. *Id.* at 2.

In support of his motion, Defendant argues materials turned over to the defense after the first motion for bond "have undermined the claim that [Defendant] was motivated to support

5

anti-U.S. terrorist activities, let alone to assist waging 'jihad against the United States.'" *Id.* at 4. Defendant also argues as an individual with chronic asthma he is "uniquely vulnerable to the potential deadly effects of the virus." *Id.* at 7. Finally, Defendant represents the "Coronavirus has, additionally, all but eliminated counsel's access to [Defendant], except via email, which is ill-suited for meaningful attorney-client communication." *Id.*

The Government opposes Defendant's motion. Gov't Resp. to Def.'s Mot. for Bond, ECF No. 92, at 2 ("Gov't Response"). In particular, the Government points out the evidence cited by Defendant in his second motion: (1) was produced to Defendant prior to the first motion but not raised there; (2) were statements made by Defendant's friends and relatives, with whom he has had consistent access; or (3) features "extremely selective" quotations from cooperating witnesses who are expected to testify to Defendant's underlying guilt at trial. *Id.* at 4–5. The Government also argues Defendant's position that Defendant intended to oppose Bashar Al-Assad, rather than the United States, is not a legal defense to the charges of providing material support to a FTO. *Id.* at 5.

## DISCUSSION

Under the Bail Reform Act, a district court may order pre-trial detention only if it finds "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court considers the four factors laid out by the statute: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(1)–(4). Defendant has been indicted for violating 18 U.S.C. § 2339B(a)(1), which dictates a rebuttable presumption

that no conditions can provide the necessary assurances. *Id.* § 3142(e)(3)(C). The statutory presumption sets "a limited burden of production—not a burden of persuasion" on Defendant to "com[e] forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (internal quotation marks omitted). However, a production by Defendant "does not eliminate the presumption favoring detention," instead, it "remains a factor to be considered among those weighed by the district court." *Id.* (internal quotation marks omitted).

As the Court found in Defendant's first motion for bond, the first factor under 18 U.S.C. § 3142(g) weighs heavily in favor of Defendant's detention. Defendant is charged with providing material support to ISIS and ANF, two groups with a history of extremely violent conduct which are designated as terrorist organizations by the United States Secretary of State.

Contrary to Defendant's assertions, the evidence Defendant presents in this second motion does not "substantially undermine []" the charges brought against Defendant. Def. Mot. at 8. As the Government correctly states, "the fact that [Defendant] may have been motivated to support ISIS primarily because of its opposition to al-Assad is not a legal defense to material support of a terrorist organization." Gov't Mot. at 5. After considering the purported exculpatory evidence presented by Defendant in his second motion, the Court again finds the recordings and documentary evidence weigh strongly in favor of detention. The newly presented evidence provides no basis for modifying this Court's prior bail determination.

The Court concludes "that a person in this country who criminally commits to supporting ISIS clearly and convincingly presents a danger to United States persons and communities in this country, as well as abroad." *Khusanov*, 731 F. App'x at 23.

7

### I. Defendant's Continued Detention Does Not Violate His Due Process Rights

When evaluating whether a period of pre-trial detention has violated the due process rights of a defendant, a district court must "consider the strength of the evidence justifying detention, the government's responsibility for the delay in proceeding to trial, and the length of the detention itself." *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012) (as amended Oct. 9, 2012). "[T]he due process limit on the duration of preventive detention requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement." *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (internal quotation omitted).

The first factor to consider, the strength of the evidence justifying detention, has not changed since the ruling of this Court on January 10, 2018. As noted above, the charges against Defendant are exceptionally serious and the case against Defendant, consisting of substantial documentary and recorded evidence, continues to be strong.

The second factor the Court must consider is the Government's responsibility for the delay in proceeding to trial. The facts underlying this case, involving a domestic support network of individuals allegedly providing financial assistance to ISIS and ANF, are complex. Other individuals were indicted and have been convicted or pled guilty for participation in the network, including the recipient of the financial assistance allegedly provided by Defendant. "This case, too, has been slowed by repeated motions and abundant discovery." *Briggs*, 697 F.3d at 102. A substantial reason for the delay in this case was the necessity of obtaining security clearances as much of the evidence in the case is classified. While the Court is disappointed trial has been so long delayed, "justification is found in the inherent complexities of this large [] case, which presents defense counsel with voluminous discovery to absorb and the

8

court with myriad motions to address." *United States v. Hill*, 462 F. App'x 125, 127 (2d Cir. 2012).

Finally, the Court finds the length of pre-trial detention, which will be 36 months as of the trial scheduled for October 2020 to be justified by the horrific history of violence the support network "of which defendant was allegedly a part inflicted on innocent victims, by the extraordinarily complex and difficult preparation needed to present this case, and, more particularly, because the lengthy delay in bringing defendant to trial may not be laid at the government's doorstep." *United States v. El-Hage*, 213 F.3d 74, 76–77 (2d Cir. 2000).

**II.     The Outbreak of COVID-19 Is Not A Sufficiently Compelling Reason To Release Defendant**

In light of the factors discussed above, the Court concluded Defendant, who allegedly "criminally commit[ed] to supporting ISIS clearly and convincingly presents a danger to United States persons and communities in this country, as well as abroad." *Khusanov*, 731 F. App'x at 23. Defendant argues, however, he should be released because, should he "become infected, he is at an increased risk of serious illness or death because he is a chronic asthmatic." Def. Mot. at 2.

Pursuant to 18 U.S.C. § 3142(i), "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Undoubtedly, the onslaught of the COVID-19 virus is a critical concern, especially with regard to individuals held in pre-trial detention, and could in some cases be such a compelling reason. *C.f. Stephens*, 2020

9

WL 1295155, *3. The analysis of whether a particular defendant should be released on these grounds must be done on a case-by-case basis.

The Court now turns to the specifics of Defendant's situation. Defendant is thirty-two years old. When interviewed by pre-trial services, he "indicated he is in good health, is not under the care of a doctor, and is not prescribed medication." Pre-Trial Services Report with Addendum, at 3, ECF. 45. This was verified by his brother in law. *Id.* In submissions in support of the present motion, Defendant's counsel reports he is "asthmatic, utilizing a spray for symptomatic relief several times each day." Def. Mot. at 7. Defendant does not attach any medical evidence regarding his new asthma medication. However, Defendant does appear on the list prepared by the BOP of vulnerable inmates as of March 26, 2020.

Ultimately, Defendant's situation is analogous to the defendant in *United States v. Redzepagic*, 17-CR-228-1 (DRH) (AKT). The defendant in that case is twenty-six years old, has also been charged with Attempt to Provide Material Support to a FTO, had also been in pre-trial detention for two years, and similarly sought release on the grounds the COVID-19 outbreak imperiled his health, as he has latent tuberculosis. *Redzepagic*, 17-CR-228-1, Tr. Mar. 17, 2020 Bail Hr'g, ECF No. 119 (Tomlinson, M.J.). Redzepagic had reported himself healthy when interviewed for the pre-trial report. After considering the situation at length, Magistrate Judge Tomlinson found the Administrative Orders issued by Chief Judge Mauskopf and the BOP Action Plan addressed the key concerns raised by defense counsel. Ultimately, Magistrate Judge Tomlinson denied the defendant's motion because of the weight of the evidence against him, concluding his underlying medical condition did not merit release, and counsel would have sufficient time to prepare for trial. *Id.*

In *United States v. Hamilton*, 19-CR-54-01, Judge Garaufis rejected a similar emergency motion for bond for an individual who "fall[s] within a higher-risk cohort should he contract COVID-19." *United States v. Hamilton*, 19-CR-54-01 (NGG), ECF No. 48, at 3, (E.D.N.Y. Mar. 20, 2020) (Garaufis, J.) (stating the defendant suffers from "advanced age and medical conditions [ ]which include dementia and a history of stroke and heart attack."). In *Hamilton*, Judge Garaufis found the defendant's significant flight risk and risk to the community outweighed his individual concerns, considering "Mr. Hamilton was not 'any more at risk than most of the inmates who are similarly situated.'" *Id.* at 1 (quoting Tr. Mar. 17, 2020 Bail Hr'g., ECF No. 44, at 9:12–13.)

The Court is mindful of the general prohibition on legal visits to inmates at the MDC, but notes Defendant's trial is scheduled for October 2020. The experienced and well regarded defense counsel in this case has an additional six months to prepare their client. The BOP Action Plan presents sophisticated methods by which defense counsel may contact their client, despite the general prohibition. BOP Action Plan ("[A]ccommodation will be accomplished at the local level and confidential legal calls will be allowed in order to ensure inmates maintain access to counsel. Attorneys seeking an in-person visit with their client or a confidential call should contact the institution Executive Assistant . . . ."). In the papers submitted to the Court, defense counsel present their efforts to secure contact with their client. Def.'s Supp. Ltr. to Mot. for Bond, March 30, 2020, at 3 n.3, ECF No. 93 ("Undersigned counsel wrote the MDC on March 24, 2020, requesting an attorney client phone call with Mr. Khusanov. The MDC responded, on the same date, 'This email has been forwarded to the appropriate department.' I immediately asked, 'Thank you. For future reference, what is the contact info for the appropriate department?' MDC did not provide me the contact information for the department to which my

11

request was sent, and I have heard nothing further from MDC."). A delay of six days, considering the ongoing crisis is not sufficient to show a denial of access to counsel. Furthermore, following the direction of the Second Circuit in *Fed. Defs. of N.Y., Inc. v. Bureau of Prisons*, 19-1778, 2020 WL 1320886 (2d Cir. March 20, 2020), Judge Brodie has appointed former U.S. Attorney General Loretta Lynch to mediate defense attorney access to detainees housed at MDC (and the MCC) and to craft new counsel visitation protocols during the pandemic. *Fed. Defs. of N.Y., Inc. v. Bureau of Prisons*, 19-CV-660 (MKB), Order Regarding the Appointment of the Honorable Loretta Lynch as Mediator, ECF No. 42.

After due consideration of the particular risks faced by Defendant given his health concerns and "the risks that [Defendant's] release would pose, the court concludes that the possibility of an outbreak at MDC is not a 'compelling circumstance' justifying his release under the circumstances of this case." *Hamilton*, 19-CR-54-01 (NGG) at 3.

## **CONCLUSION**

The Court presumes Mr. Khusanov is innocent as a matter of law and will so instruct the jury at his trial this October. However, Life, Liberty and the Pursuit of Happiness also define our core values. As Nuremberg Prosecutor and Supreme Court Justice Robert Jackson stated in his storied dissent: "There is danger that, if the Court does not temper its doctrinaire logic with a little practical wisdom, it will convert the Constitutional Bill of Rights into a suicide pact." *Terminiello v. City of Chicago*, 337 U.S. 1, 36 (1949). The United States Constitution contains a great many provisions. A suicide pact, however, is not among them. The Court denies the motion.

**SO ORDERED.**

s/ WFK

Dated: April 7, 2020  HON. WILLIAM F. KUNTZ, II
       Brooklyn, New York  UNITED STATES DISTRICT