

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP/JMH/JEA
F. #2014R01413

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 7, 2022

By ECF and Email

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Dilshod Khusanov
                 Criminal Docket No. 17-475 (WFK)

Dear Judge Kuntz:

        The government submits this letter in anticipation of the above-referenced defendant's sentencing, currently scheduled for August 10, 2022 at 12:00 p.m. On October 18, 2021, the defendant pleaded guilty before Your Honor, pursuant to a plea agreement with the government under Federal Rule of Criminal Procedure 11(c)(1)(C), to attempting to provide material support to the designated foreign terrorist organizations the Islamic State of Iraq and al-Sham ("ISIS") and al-Nusrah Front ("ANF"), in violation of 18 U.S.C. § 2339B.

        For the reasons discussed herein, the government respectfully submits that the agreed-upon sentence of 132 months' imprisonment and supervised release term of life is appropriate in this case, and that – as agreed by the defendant in his plea agreement – the Court should enter a judicial order of removal pursuant to Title 8, United States Code, Sections 1228(c)(5) and 1227.[1]

---

[1] The government will provide the Court with the judicial order of removal at the time of sentencing.

I.    Background

   A.    The Islamic State of Iraq and al-Sham and the al-Nusrah Front

At all times relevant to the above-captioned indictment, ISIS was an extremist terrorist organization with the goal of establishing a caliphate—a nation-state run according to Islamic law.  See generally Presentence Investigation Report at ¶¶ 2-5 (April 5, 2022) ("the PSR").  ISIS sought to achieve its goals through a brutal campaign of violence, including but not limited to mass executions, kidnappings, torture, and suicide bombings.  PSR ¶ 5.  By 2014—shortly before the core conduct at issue in this case—ISIS proclaimed itself to be a nation-state.  PSR ¶ 3.  Via the Internet and social media, ISIS sought to engage with and radicalize potential recruits to either travel to ISIS territory to be fighters, or to carry out terrorist attacks where they live.  Id.

At all relevant times, ISIS—either by that moniker or one of its many predecessor or successor names and entities—has been a designated foreign terrorist organization.  See PSR ¶ 3.  Similarly, at all relevant times, ANF was a designated foreign terrorist organization.[2]

   B.    The Investigation and the Defendant's Offense Conduct

In 2014, the government began to investigate a group of individuals based in Brooklyn, New York, and elsewhere in the United States who either planned to travel to Syria to become ISIS or ANF fighters, or who financed the travel of such aspiring fighters.  See PSR ¶¶ 6-8.

As the Court will recall from the related trial of United States v. Dilkhayot Kasimov ("Kasimov"), the government's investigation uncovered an extensive financial support network that raised money for, among other things, financing travel to Syria by individuals wishing to join and fight on behalf of ISIS and ANF.  That network's participants referred to it as "chayxona," an Uzbek word which translates to the "tea house" or "tea party."  The group also raised money to help support the families that the fighters left behind when they went to Syria and to help support the widows and families of those who were killed fighting.  See Kasimov Trial Tr., dated Sept. 19, 2019, at 405-06.  Khusanov was a member of this financial support network.  PSR ¶ 9.

By August of 2014, the Federal Bureau of Investigation ("the FBI") had identified co-conspirators Abdurasul Juraboev ("Juraboev") and Akhror Saidakhmetov ("Saidakhmetov") as potential supporters of ISIS who had expressed their support in various online postings.  See Kasimov Trial Tr. 129-131; PSR ¶¶ 6-7. By February 2015, Saidakhmetov had decided to travel to Syria.  Several co-conspirators—including Kasimov,

---

[2] See, e.g., Public Notices 8732, 8734, 79 Fed. Reg. 27972 (May 7, 2014) (Secretary of State's determination that ANF was a foreign terrorist organization; ANF had previously been designated as an alias of ISIS, also known as al-Qaeda in Iraq).

Abror Habibov ("Habibov"), Azizjon Rakhmatov ("Rakhmatov"), Akmal Zakirov ("Zakirov"), and the defendant—aided Saidakhmetov in various ways. PSR ¶¶ 9-20.

On February 18, 2015, Habibov helped Saidakhmetov purchase a round-trip airplane ticket, departing from JFK International Airport located in Queens, New York ("JFK"). PSR ¶ 12. Saidakhmetov's planned itinerary was scheduled to depart from JFK bound for Istanbul by way of Kyiv, Ukraine, on February 25, 2015. PSR ¶ 10; see also Kasimov, Trial Tr. at 107-09.

Over the course of the ensuing week, the co-conspirators raised money to support Saidakhmetov's travel. PSR ¶ 12. On or about February 19, 2015, Zakirov and Habibov agreed that between the two of them, they should contribute $4,000. PSR ¶ 12. During a call, Habibov specifically mentioned the defendant to Zakirov and asked him to "Call Dilshod [Khusanov], tell Dilshod to give as much as they can . . . Tell Dilshod to convey" the request to a co-conspirator ("CC-1"), "who should pass a message to the guys around to give as much as they can." that he should call the defendant to request funds "and to give as much as they can." Id.

Toll records reflect that the defendant, Zakirov and others were in frequent contact immediately after the call summarized above. PSR ¶ 14. Zakirov called the defendant and left a voicemail at approximately 11:36 p.m. Id. Khusanov returned the call the next day, and, over the course of the next several days, he spoke to CC-1 on several occasions—all as Habibov and Zakirov had discussed. PSR ¶ 15.

Specifically, Khusanov discussed with Zakirov providing his own money and raising money from others to fund Saidakhmetov's travel. Bank records and other evidence further reflect that the defendant facilitated the transfer of funds from several co-conspirators to Zakirov. For example, on February 23, 2015, CC-1 transferred $1,000 from his own account to Khusanov's, and the same day a second co-conspirator (CC-2) deposited $1,500 into Zakirov's bank account at Khusanov's direction. PSR ¶ 15. A conversation between Habibov and Zakirov reflected that $300 of the money Khusanov gave to Zakirov was specifically for Saidakhmetov's travel.

In the early morning hours of February 25, 2015, Saidakhmetov and Kasimov met at JFK, whereupon Kasimov delivered $1,600 in cash that had been raised from various individuals, including the defendant. PSR ¶ 17. Shortly thereafter, Saidakhmetov was arrested before he could board his flight. PSR ¶ 18.

C. Procedural History

On August 29, 2017, a grand jury in the Eastern District of New York returned an indictment charging Khusanov with one count of conspiring and one count of attempting to provide material support to ISIS and ANF in violation of 18 U.S.C. § 2339B. Two days later, on August 31, 2017, the defendant was arrested at his residence in Villa Park, Illinois. PSR ¶ 21.

3

On October 18, 2021, the defendant pleaded guilty to Count Two of the indictment, pursuant to a plea agreement in accordance with Federal Rule of Criminal Procedure 11(c)(1)(C), with an agreed-upon sentence of 132 months' imprisonment, lifetime supervised release, and his consent to entry of a judicial order of removal from the United States. See Plea Agreement ¶¶ 2, 5 (Oct. 18, 2021).

II.     The Sentencing Scheme and the Guidelines Calculation

As noted above, Khusanov pleaded guilty to attempting to provide material support to ISIS and ANF, in violation of 18 U.S.C. § 2339B. As applicable here, that statute carries a sentencing range of up to 15 years' imprisonment, the statutory maximum sentence.[3] As set forth below, as the Probation Department concluded in the PSR and PSR Addendum, and as the defendant stipulated in the plea agreement, the Guidelines calculation yields an advisory Guidelines sentence of 15 years' (180 months') imprisonment, which is the statutory maximum for the offense.

   A.    The Guidelines Calculation

The PSR's total offense level of 40 is premised upon a base offense level of 26 (U.S.S.G. § 2M5.3(a)), a two-level enhancement because the offense involved the provision of material support or resources to a foreign terrorist organization with the intent, knowledge or reason to believe that the support or resources were to be used to commit or assist in the commission of a violent act (U.S.S.G. § 2M5.3(b)(1)(E)), and a 12-level enhancement because the offense involved or was intended to promote a federal crime of terrorism (U.S.S.G. § 3A1.4). The PSR correctly concludes that, decreasing three levels for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a)-(b), the applicable Guidelines level as to the defendant is 37. PSR ¶¶ 25-35. The defendant stipulated to this Guidelines calculation in the plea agreement. See Plea Agreement ¶ 2 (Oct. 18, 2021).[4]

The defendant's Criminal History category is VI based on the application of Section 3A1.4. With a total offense level of 37 and a Criminal History category of VI, the

---

[3] After the offense conduct was completed, Congress amended Title 18, United States Code, Section 2339B to increase the statutory maximum sentence for a violation of this statute to 20 years' imprisonment. At the time of the offense, however, the statutory maximum sentence was 15 years' imprisonment.

[4] Because the defendant stipulated to the application of the terrorism enhancement, the Court should disregard his argument that his offense falls outside the conduct that the terrorism enhancement was intended to address. Indeed, the court has previously upheld the application of the terrorism enhancement to Khusanov's co-conspirators who engaged in similar conduct. In any event, because the parties have acknowledged in the plea agreement that the agreed-upon sentence is not based upon the Guidelines, the defendant's argument is beside the point.

resulting Guidelines range is 360 months to life. PSR ¶ 75. However, because the statutory maximum sentence is 180 months, the effective Guidelines range is 180 months' imprisonment. Id.

B. Defendant's PSR Objections

In the defendant's sentencing letter, the defendant reiterates certain objections to the PSR, to include certain objections related to the offense conduct and other offender characteristics. See Def. Sent'ng Ltr. at 3-4 (ECF No. 136). On July 7, 2022, Probation filed an addendum to the PSR and addressed each of the defendant's objections. The government concurs with Probation's position as to each of the objections. As to the defendant's objection to paragraph 20, the government agrees with Probation that this information is relevant evidence of the defendant's participation in the offense. In addition, the government also agrees with Probation that the description of the defendant as an "average participant" is an appropriate characterization of the defendant.

III. The Court Should Sentence the Defendant to 132 Months of Imprisonment

The government respectfully submits that a sentence of 132 months of imprisonment (11 years) and a supervised release term of life is sufficient, but not greater than necessary, to reflect the purposes of sentencing.

A. Legal Standard

Rule 11(c)(3)(A) of the Federal Rules of Criminal Procedure provides that, if presented with a plea agreement pursuant to Rule 11(c)(1)(C), "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Section 6B1.2(c) of the Guidelines sets forth the standard for acceptance of a Rule 11(c)(1)(C) plea agreement. As relevant here, Section 6B1.2(c) provides that "the court may accept the agreement if the court is satisfied either that: (1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form." Whether to accept a plea agreement rests within the Court's discretion. See United States v. Severino, 800 F.2d 42, 45 (2d Cir. 1986); United States v. Torres-Echavarria, 129 F.3d 692, 696 (2d Cir. 1997). However, "[d]eference ought to be paid to sentencing bargains because prosecutors are in the best position to make decisions about what sentence to pursue in plea negotiations." United States v. Espar, Inc., 15-CR-28 (JG), 2015 U.S. Dist. LEXIS 30469, at *2 (E.D.N.Y. Mar. 10, 2015).

B. 132 Months of Imprisonment Is the Appropriate Sentence

The Court should accept the parties' Rule 11(c)(1)(C) plea agreement and impose the proposed sentence of 132 months of imprisonment and lifetime supervised release. The sentence is below the advisory Guidelines range of 180 months' imprisonment, but the government respectfully submits that the proposed sentence appropriately addresses

each of the Section 3553(a) factors, including the nature and circumstances of the offense and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.

The agreed-upon sentence appropriately balances the seriousness of the defendant's conduct and the need to ensure that the defendant does not engage in further terrorist activity against the benefits of a negotiated resolution, and it permits careful allocation of prosecutorial and other governmental resources, which would otherwise be devoted to extensive pretrial and trial litigation.

The agreed-upon sentence reflects the seriousness of the defendant's conduct in contributing money to send another person to travel to Syria to join and fight with ISIS and ANF, which Khusanov knew to be terrorist organizations. Indeed, at the time that Khusanov gave money to fund Saidakhmetov's travel to join ISIS, it was common knowledge that ISIS's principal objective was to establish a new state in Syria and Iraq and that ISIS used terrorism and other violent acts to accomplish that objective. Contrary to the argument set forth in the defendant's submission, the crime he committed is both serious and grave, especially when considering the horrific acts and destruction perpetrated by the terrorist organizations through the hands of foreign fighters.

In his sentencing submission, the defendant seeks to minimize the seriousness of his offense by arguing that his motivation was to assist in the struggle against Bashar al-Assad. Even crediting that claim, the manner in which Khusanov went about doing so does not entitle him to leniency. He gave money to fund a jihadist who planned to travel to Syria to fight with a terrorist organization.[5] And while Khusanov states in his sentencing submission (at p. 2) that Saidakhmetov planned to go to Syria to fight against Assad, in fact Saidakhmetov expressed over many months prior to his intended travel a pro-ISIS and anti-America ideology. Saidakhmetov did not express the intent to travel to Syria for the purpose of fighting against Assad. And there is no evidence that Khusanov made any effort to find out before he gave money to support Saidakhmetov's travel that Saidakhmetov was going for the purpose of fighting against Assad. Indeed, as Khusanov admitted during his plea allocution, he "refused to investigate" and "refused to ask" what Saidakhmetov "was trying to do or what he was planning exactly." (Plea Tr. at 31-32). Thus, Khusanov's conduct was extremely serious, and the agreed-upon sentence reflects the seriousness of that conduct.

Additionally, the proposed sentence is sufficient but not greater than necessary to deter such conduct in the future by making unambiguously clear that assisting travelers in joining and fighting on behalf of terrorist organizations will result in a substantial period of incarceration. The agreed-upon sentence will deter others from providing funding to those who would travel to join ISIS or another foreign terrorist organization, and promote respect

---

[5] Khusanov also told a co-conspirator that "he would travel to Syria and join the Uzbeks fighting against Assad if his family would go to Syria with him."

for the law. The Second Circuit has repeatedly reaffirmed the necessity of significant sentences for "terrorists and their supporters" for deterrence and rehabilitative purposes: "Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time." United States v. Meskini, 319 F.3d 88, 92 (2d Cir. 2003); see also United States v. Mumuni, 946 F.3d 97, 112-13 (2d Cir. 2019).

The sentence will also specifically deter this defendant from supporting terrorism activity in the future, and will result in his removal from the United States once he has served his sentence. Indeed, the sentence and judicial order of removal will ensure that the defendant poses no future danger to the public here in the United States.

For those reasons, the government respectfully submits that the proposed resolution adequately holds the defendant responsible for his conduct and is an appropriate exercise of prosecutorial discretion. Indeed, Courts have long recognized the interests described herein as appropriate bases for the exercise of prosecutorial discretion:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern.

Wayte v. United States, 470 U.S. 598, 607 (1985).

In his sentencing submission, Khusanov spends pages describing conditions at the Metropolitan Detention Center and his bouts with COVID and argues that these constitute a mitigating factor in justification of a sentence below that contemplated by the plea agreement. However, all of the conduct that Khusanov describes precedes his plea in October 2021 when he agreed that a 132-month term of imprisonment was the appropriate term of imprisonment. He points to nothing involving his prison conditions that has materially changed to his detriment since entering the plea in October 2021.

The government rejects the assertion in the defendant's letter that his choice to plead guilty and agree to a 132-month term of imprisonment and entry of a judicial order of removal constituted a "Hobson's choice." See Def. Sent'ng Ltr. at 14. The defendant did in fact have a choice: whether or not to fund an individual whom he believed would travel to Syria to fight in support of a foreign terrorist organization. He chose to provide that support. The defendant also had a choice in whether or not to accept the government's plea offer. He had the choice to exercise his constitutional right to a trial by jury and to put the government

to its burden of proof beyond a reasonable doubt, and if found guilty, to ask this Court to impose whatever sentence he believed was appropriate. The defendant chose to plead guilty. He did so "voluntarily" and of his "own free will", as he told the Court, under oath, during his change of plea hearing. See Plea Tr. at 29:25-30:23. In the end, the choices that the defendant made were his and his alone.

Having chosen to plead guilty and having agreed in the Rule 11(c)(1)(C) plea agreement "that a specific sentence of 132 months' imprisonment and a supervised release term of life is the appropriate term of imprisonment and term of supervised release in this case," Plea Agreement ¶ 2, it is contrary to both the letter and spirit of that agreement for the defendant now to ask the Court to recommend that the government agree to a lower sentence than that set forth in the plea agreement, see Def. Sent'ng Ltr. at 14. In agreeing to the Rule 11(c)(1)(C) plea, the government determined that a 132-month term of imprisonment, to be followed by the defendant's removal from the United States as a result of the entry of a judicial order of removal, was an appropriate resolution of this case. Indeed, the 132-month term of imprisonment is below the advisory Guidelines range, notwithstanding the seriousness of the defendant's conduct. The government's assessment that this is an appropriate sentence has not changed.

Accordingly, the government respectfully submits that the Court should accept the defendant's Rule 11(c)(1)(C) plea and, consistent with that agreement, impose a sentence of 132 months of imprisonment, to be followed by lifetime supervised release, and enter the judicial order of removal to be submitted by the government at the time of sentencing.

IV.     Conclusion

   For the foregoing reasons, the government respectfully submits that the agreed-upon sentence of 132 months of imprisonment pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) is appropriate in this case.

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                                By:     /s/
                                        Douglas M. Pravda
                                        J. Matthew Haggans
                                        Jonathan E. Algor
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

cc:    Clerk of Court (WFK) (By ECF)
       Richard W. Levitt & Deborah Colson, Esqs. (By ECF and Email)
       U.S. Probation Officer Michelle B. Malko (By Email)