1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 17-CR-475(WFK)
                               :
                               :
                               :
        -against-             : United States Courthouse
                               : Brooklyn, New York
                               :
                               :
DILSHOD KHUSANOV,              : Wednesday, August 10, 2022
                               : 12:00 pm.
            Defendant.         :
                               :
                               :

- - - - - - - - - - - - - X

         TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
        BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
            UNITED STATES DISTRICT COURT JUDGE

                A P P E A R A N C E S:

For the Government:     BREON S. PEACE, U.S. ATTORNEY
                        EASTERN DISTRICT OF NEW YORK
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                        BY:JONATHAN E. ALGOR, IV
                          MATTHEW HAGGANS
                          Assistants United States Attorney

For the Defendant:     COLSON LAW PLLC
                          80 Broad Street - 19th Floor
                          New York, New York 10004
                        BY:DEBORAH AUSTERN COLSON, ESQ.

                       LEVITT & KAIZER
                          40 Fulton Street - 23rd Floor
                          New York, New York 10038
                        BY:RICHARD W. LEVITT, ESQ.

Court Reporter:        LINDA A. MARINO, OFFICIAL COURT REPORTER
                       225 Cadman Plaza East/Brooklyn, NY 11201
                       lindacsr@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

1          THE COURTROOM DEPUTY:  Criminal cause for a

2   sentencing, 17-CR-475, USA v. Khusanov.

3          Counsel, please state your appearances for the

4   record starting with the Government.

5          MR. HAGGANS:  Good afternoon, your Honor.  Matthew

6   Haggans and Jonathan Algor for the United States.

7          THE COURT:  Good afternoon.

8          Are you both fully vacc'd and boosted?

9          MR. HAGGANS:  Yes, your Honor.

10          THE COURT:  You may remove your masks and be seated.

11          And with you at counsel table is?

12          THE PROBATION OFFICER:  Shayna Bryant, U.S.

13   Probation.  Good afternoon, your Honor.

14          THE COURT:  Good afternoon.

15          Are you fully vacc'd and boosted?

16          THE PROBATION OFFICER:  Yes, I am.

17          THE COURT:  You may remove your mask if you wish --

18   you don't have to do it -- and be seated.

19          MR. LEVITT:  Good afternoon, your Honor.  Richard

20   Levitt and Deborah Colson on behalf of Dilshod Khusanov, who

21   is standing to my right.

22          I am fully vaccinated and whatever, your Honor.

23          THE COURT:  You may remove your mask, your robe,

24   whatever else, and be seated.  Thank you.

25          MR. LEVITT:  I think I'll limit it to the mask.

Proceedings                                                    3

1          THE COURT:  Okay.  Is your client fully vacc'd and

2    boosted, sir?

3          MR. LEVITT:  He only has one vaccination.

4          THE COURT:  Then he has to keep his mask on.  He

5    should probably pull it up over his nose just because of our

6    protocols.  Sorry about that.

7          And are you fully vacc'd and boosted, ma'am?

8          MS. COLSON:  I am, your Honor.

9          THE COURT:  You may remove your mask if you wish.

10          MS. COLSON:  Thank you.

11          THE COURT:  Thank you.  You may be seated.

12          And ladies and gentlemen of the public, you may be

13    seated as well.

14          Are there any other counsel who wish to identify

15    themselves and appear in this action?

16          Hearing none, we will proceed.

17          Good afternoon, Mr. Khusanov.

18          THE DEFENDANT:  Good afternoon.

19          THE COURT:  I'm going to ask you to pull that

20    microphone close to you, make sure the light's on.  You can

21    share the one with your counsel if you prefer, just make sure

22    that green light is on, okay?

23          You can pull it to you, sir.  It will swivel.

24          Mr. Khusanov, have you had an opportunity to review

25    carefully the presentence investigation report filed on

Proceedings                                                          4

1   April 5 of 2022 in your case?

2           THE DEFENDANT:  Yes, I have.

3           THE COURT:  And have you reviewed that report with

4   your counsel?

5           THE DEFENDANT:  Yes, I did.

6           THE COURT:  And defense counsel's objections, have

7   you reviewed those, the objections to the presentence

8   investigation report filed on April 19 of 2022?

9           THE DEFENDANT:  Yes.

10          THE COURT:  And have you read the addendum to the

11  presentence investigation report filed on July 7 of 2022?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And have you read defense counsel's

14  sentencing memorandum filed on August 2 of 2022, which

15  includes the following documents:  Copies of your Bureau of

16  Prisons educational certificates as well as a psychological

17  services group certificate and group participation report; and

18  two letters you wrote, one of which is addressed to this

19  Court, and numerous letters of support from your family and

20  community.

21          Have you read those items?

22          THE DEFENDANT:  Yes, I have.

23          THE COURT:  Now, the Government's sentencing

24  memorandum filed on August 7 of 2022, have you read that, sir?

25          THE DEFENDANT:  Yes, I have.

Proceedings                                              5

1          THE COURT:  Now, in addition to those materials, my

2    files reflect copies of the following documents:  The

3    indictment filed on August 29 of 2017 and the plea agreement

4    filed on October 21 of 2021.

5               Are there any other documents, beginning with the

6    Government, either counsel, would like to mention with

7    particularity at this time?

8               MR. HAGGANS:  Not from the Government, your Honor.

9               THE COURT:  Defense counsel?

10              MR. LEVITT:  No, your Honor.

11              THE COURT:  Mr. Khusanov, do you feel prepared to go

12   forward with your sentencing today, sir?

13              THE DEFENDANT:  Yes, I do.

14              THE COURT:  Mr. Khusanov, you have the right to

15   address this Court before I impose sentence.  I will give you

16   the opportunity to do so in just a few minutes and you should

17   feel free to say anything you think appropriate at that time

18   before I finalize my judgment in your case.

19              Do you understand?

20              THE DEFENDANT:  Yes, I know.

21              THE COURT:  Are you satisfied with your counsel's

22   representation?

23              THE DEFENDANT:  Yes, I am.

24              THE COURT:  Do you feel you've received the

25   effective assistance of counsel?

Proceedings                              6

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you do not believe you've received

3    the effective assistance of counsel, you may raise a claim of

4    ineffective assistance of counsel at an appropriate time and

5    in an appropriate forum; do you understand?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  The United States Code sets forth the

8    following sentencing parameters for attempt to provide

9    material support to a foreign terrorist organization, in

10   violation of Title 18, United States Code, Section

11   2339B(a)(1):  A statutory maximum imprisonment term of 15

12   years; a statutory maximum term of supervised release of life;

13   a statutory probation term of not less than one year nor more

14   than five years, and that's the statutory maximum imprisonment

15   term of up to 15 years; a maximum fine of $250,000; a

16   mandatory special assessment of $100 per count, which I'm

17   required to impose in all cases.

18          This Court must also consider the sentencing

19   parameters set by the United States Sentencing Guidelines.

20   Here, the applicable guideline for attempt to provide material

21   support to a foreign terrorist organization, in violation of

22   Title 18, United States Code, Section 2339B(a)(1) is USSG

23   Section 2M, as in Mary, 5.3A, which provides a base offense

24   level of 26.

25          Because the instant offense involved the provision

Proceedings                                            7

1   of material support with the intent, knowledge, or reason to

2   believe such support would be used to commit or to assist in

3   the commission of a violent act, a two-level increase is

4   warranted pursuant to USSG Section 2M5.3B1E.

5           A 12-level increase is also warranted pursuant to

6   USSG Section 3A1.4A because the instant offense is a felony

7   that involved or was intended to promote a federal crime of

8   terrorism.  By reference, in the Section 3A1.4 application,

9   notes to Title 18, United States Code, Section 2332B(g)(5), a

10  federal crime of terrorism is defined as an offense that is:

11  A, calculated to influence or to effect the conduct of

12  government by intimidation or coercion or to retaliate against

13  government conduct; and, B, is a violation of one or more of

14  several enumerated criminal statutes, including Title 18,

15  United States Code, Section 2339B, relating to providing

16  material support to a terrorist organization.

17          A two-level reduction is also warranted pursuant to

18  USSG Section 3E, as in Edward, 1.1A, because the Defendant has

19  clearly demonstrated acceptance of responsibility for the

20  offense.

21          A further one-level reduction is warranted pursuant

22  to USSG Section 3E1.1B because the Government was notified in

23  a timely manner of the Defendant's intention to plead guilty.

24  Accordingly, the adjusted offense level is 37.

25          The Defendant has no prior convictions, which

Proceedings                                          8

1    results in a criminal history score of zero.  According to the

2    sentencing table in USSG, Chapter 5, Part A, a criminal

3    history score of zero establishes a criminal history category

4    of I.

5              However, pursuant to USSG Section 3A1.4B, the

6    criminal history category in this case is VI because the

7    instant offense involved was or was intended to promote a

8    federal crime of terrorism.  For an offense level of 37 and a

9    criminal history category of VI, the sentencing guidelines,

10   suggest a term of incarceration of 360 months to life.

11   However, the statutorily authorized maximum sentence is less

12   than the maximum of the applicable guideline range; therefore,

13   the restricted guideline range is 180 months pursuant to USSG

14   Section 5G1.2B.

15             The guidelines further suggest as follows:  A term

16   of supervised release of one year to life and a fine of

17   between $20,000 and $200,000.

18             Pursuant to paragraph five of the plea agreement,

19   you also agreed to the entry of a stipulated judicial order of

20   removal at the time of sentencing under Title 8, United States

21   Code, Sections 1228(c)(5) and 1227.

22             Probation recommends a sentence of 15 years in the

23   custody of the Attorney General, two years of supervised

24   release with special conditions, and a $100 special

25   assessment.  In support of its recommendation, Probation cites

Proceedings                                        9

1   the seriousness of the offense as well as the Defendant's

2   efforts to conceal the sources and recipients of the funds and

3   to avoid detection by law enforcement officers.

4            The defense asks the Court to suggest to the

5   Government that it agree to a lower sentence and that a lower

6   sentence be imposed.  Defense counsel also requests the Court

7   recommend the Defendant be housed at the federal correctional

8   complex in Coleman, C-O-L-E-M-A-N, Florida, the closest

9   facility to his wife, children, and in-laws.

10           In support of its request, defense counsel

11  emphasizes the Defendant's regret for his actions as well as

12  the well-documented harsh conditions the Defendant has

13  experienced at the MDC; conditions including the 2019 blackout

14  and the conditions resulting from the COVID-19 pandemic.

15           Despite these conditions, defense counsel notes that

16  the Defendant received no disciplinary infractions and

17  completed several courses.

18           Finally, defense counsel emphasizes the Defendant's

19  wife and children's reliance upon him, particularly noting the

20  care Defendant provided to his autistic son prior to his

21  arrest.

22           The Government recommends the Court impose the

23  sentence agreed upon in Defendant's Rule 11(c)(1)(C) plea

24  agreement, which is 132 months of incarceration followed by

25  lifetime supervised release and the entry of the judicial

Proceedings                                    10

1    order of removal.

2              In support, the Government emphasizes the

3    seriousness of the Defendant's conduct in providing support to

4    an individual whom he knew would travel to Syria to fight in

5    support of a foreign terrorist organization as well as the

6    Defendant's prior agreement to the sentence in connection with

7    his guilty plea.

8              Counsel, beginning with the Government, am I missing

9    anything pertinent to today's proceedings?

10             MR. HAGGANS:  No, your Honor.

11             THE COURT:  Defense counsel, am I missing anything

12   pertinent to today's proceedings?

13             MR. LEVITT:  No, your Honor.

14             THE COURT:  Are there any objections either counsel

15   wishes to raise other than those that have been submitted to

16   the Court in writing?

17             Government?

18             MR. HAGGANS:  No, your Honor.

19             THE COURT:  Defense counsel?

20             MR. LEVITT:  No, Judge.

21             THE COURT:  That being the case, I will now turn it

22   over to defense counsel.

23             MR. LEVITT:  Thank you, Judge.

24             We don't have anything to add additional to what we

25   have included within the papers, which I think were thorough

```
                        Proceedings                    11
```

1   on both sides of these tables.  We did have and do have

2   certain objections to specific factual statements within the

3   PSR which are noted in our letter to your Honor.

4              THE COURT:  Yes, sir.  I've reviewed those.

5              MR. LEVITT:  So, I have nothing else to add prior to

6   the imposition of sentence.

7              THE COURT:  Thank you, sir.

8              Government counsel?

9              MR. HAGGANS:  We won't belabor the point, your

10  Honor.  We know that the Court is very familiar with the

11  underlying facts of this investigation from presiding over a

12  related trial.

13             We set forth in our papers and in the plea agreement

14  between the parties what we believe is the appropriate

15  sentence in this case and we request that the Court impose

16  that sentence as respecting the bargain that the parties made

17  at the time of the plea and that the Defendant accepted at

18  that time as well.

19             THE COURT:  Thank you, counsel.

20             Probation, do you have anything to add?

21             THE PROBATION OFFICER:  The probation department

22  will rely on its response outlined in the addendum and we have

23  nothing further to add at this time.  Thank you.

24             THE COURT:  Thank you.

25             Mr. Khusanov, what, if anything, would you like to

Proceedings                                    12

1   say to the Court at this time?

2           THE DEFENDANT:  No, thank you.  I've already said in

3   my letter to the Court.

4           THE COURT:  Thank you.

5           The Court has this to say, Mr. Khusanov:  Perfect

6   justice in this case would involve a power that neither I nor

7   any judge nor any human being, for that matter, has in his or

8   her hands.  It is challenging and humbling to sit here as the

9   Court and to pass sentence on a fellow human being.  This case

10  impacts your community.  This case impacts your family.

11  Ultimately, of course, this case impacts you.  Ultimately,

12  this case is about you, about what you did that brought us

13  here today, which is a day of sadness and a day of tragedy.

14          On August 29 of 2017, the United States grand jury

15  returned a two-count indictment charging the Defendant with

16  conspiracy to provide material support to a foreign terrorist

17  organization, in violation of Title 18 of the United States

18  Code, Section 2339B(a)(1), and an attempt to provide material

19  support to a foreign terrorist organization, in violation of

20  18 U.S.C. Section 2339B(a)(1).

21          Specifically, the Defendant was charged with

22  conspiring and attempting to provide financial support for

23  individuals to travel to the Middle East to join the Islamic

24  State of Iraq and al-Sham, known as ISIS, and the al-Nusrah,

25  N-U-S-R-A-H, Front, which at all relevant times have been

Proceedings                                                13

1   designated by the Secretary of State as a foreign terrorist

2   organization.

3         On October 18 of 2021, the Defendant pled guilty to

4   Count Two of the indictment, pursuant to a Rule 11(c)(1)(C)

5   plea agreement.  At the conclusion of the change of plea

6   hearing, the Court accepted the Defendant's plea of guilty and

7   the plea agreement.

8         Under paragraph two of the plea agreement, the

9   Government and the Defendant agreed to a sentence of 132

10  months of incarceration to be followed by a lifetime term of

11  supervised release.  The plea agreement further states the

12  Defendant agrees to the entry of a stipulated judicial order

13  of removal to be signed by the Court at the time of sentencing

14  pursuant to 8 U.S.C. Sections 1228(c)(5) and 1227.

15        The legal standard is as follows.

16        The parties have agreed that the specified

17  imprisonment and supervised release terms are not based on the

18  sentencing guidelines, according to the plea agreement

19  paragraph two.  This Court must, however, consider the

20  guidelines, nevertheless, in deciding whether to accept the

21  plea agreement and to enter sentence accordingly under United

22  States Sentencing Guidelines Section 6B1.2.

23        Under USSG Section 6B1.2, the Court may accept an

24  agreed-upon sentence under Federal Rule of Criminal Procedure

25  Rule 11(c)(1)(C) if the agreed sentence is within the

Proceedings                                    14

1   applicable guideline range, Section 6B1.2(c)(1).  The Court

2   may also accept the sentence if the agreed-upon sentence falls

3   below the applicable guideline range and the Court provides

4   justifiable reasons for the departure from the sentencing

5   range and sets forth those reasons with specificity in the

6   statement of reasons form as provided by Section 6B1.3(c)(2).

7            Once the Court accepts the plea agreement, the Court

8   is bound to the specific sentence agreed upon by the parties

9   of the plea agreement pursuant to Federal Rule of Criminal

10  Procedure 11(c)(1)(C).

11           A recommendation or request binds the Court once the

12  Court accepts the plea agreement.  Rejection of the plea

13  agreement or deviation from the agreed-upon sentence, however,

14  permits the Defendant to withdraw his guilty plea under

15  Federal Rule of Criminal Procedure 11(c)(5).

16           18 U.S.C. Section 3553 outlines the procedures for

17  imposing sentence in a criminal case.  The starting point and

18  initial benchmark in evaluating a criminal sentence is the

19  guidelines sentencing range as set forth in Gall v. United

20  States, 552 U.S. 38 at Page 49, decided by the Supreme Court

21  in 2007.

22           If and when a district court chooses to impose a

23  sentence outside the sentencing guideline range, the Court

24  shall state in open court the reasons for its imposition of a

25  particular sentence and the specific reason for the imposition

Proceedings                                        15

1   of a sentence different from that described in the guidelines

2   under 18 U.S.C. Section 3553(c)(2).  The Court must also state

3   with specificity its reasons for so departing or varying in a

4   statement of reasons form.

5           Here, as explained below, the applicable guidelines

6   sentencing range for the Defendant's offense is 180 months of

7   imprisonment.  The agreed-upon sentence of 132 months of

8   incarceration falls below that range.  The Court, thus, now

9   provides a statement of justifiable reasons and a simple

10  fact-specific statement explaining why the guidelines range in

11  this case does not account for a specific factor or factors

12  under 3553(a), as set forth by my late lamented colleague Jack

13  Weinstein in United States v. Davis, 8-CR-332, 2010 WL 1221709

14  at *1, decided here in the Eastern District on March 29 of

15  2010.

16          The analysis begins with the history and

17  characteristics of the Defendant and the nature and

18  circumstances of the offense.  The first 3553(a) factor

19  requires this Court to evaluate the nature and circumstances

20  of the offense and the history and characteristics of the

21  Defendant.

22          The Defendant was born on September 3, 1985, in

23  Tashkent, Uzbekistan, to Takhir Khusanov and Valida Khusanov.

24  Defendant's parents retired and reside in Tashkent.  Defendant

25  also has two sisters who reside there and with whom he is

Proceedings                                16

1   reportedly in close relationship.  The Defendant's father and

2   sisters, however, are unaware of his conviction.  His mother

3   is aware of his conviction and remains supportive.

4         Defendant was raised by his parents in a middle

5   income household and reported a normal childhood and good,

6   solid relationships with his siblings and parents.  Defendant

7   reported no abuse in the household.

8         On July 2013, the Defendant married Aziza,

9   A-Z-I-Z-A, second name E-R-K-I-N-O-V-A in Kings County, New

10  York.  The Defendant and his wife have three children, one of

11  whom has autism spectrum disorder.  His wife currently resides

12  in Florida and is unemployed.  She is aware of Defendant's

13  conviction and remains supportive of him.

14        Defendant moved from Tashkent, Uzbekistan, to Troy,

15  Alabama, in December of 2008 on a student visa to attend

16  school.  He later moved to New York, New York, to live with

17  friends and an aunt.  The Defendant is a permanent United

18  States resident.  The Defendant returned to Uzbekistan for a

19  short period in 2011 before returning to New York.

20        In May 2014, the Defendant and his wife moved to

21  Villa Park, Illinois, where he resided prior to his arrest for

22  the instant offense.

23        In 2008, the Defendant graduated from the Tashkent,

24  T-A-S-H-K-E-N-T, State University of World Languages with a

25  degree in world languages.

Proceedings                                    17

1        In January 2009, the Defendant was enrolled in a

2   Master of Business Administration program for several weeks at

3   Troy University in Troy, Alabama.  He later left the program

4   due to the language challenges.

5            From 2009 to 2010, the Defendant completed an

6   English language program at Bluedata, B-L-U-E-D-A-T-A,

7   International Institute in New York, New York.

8            From August 2015 until his arrest in the instant

9   offense in 2017, the Defendant was employed driving trucks for

10  SDE Logistics.

11           The Defendant has no prior convictions.

12           In 2019, the Defendant suffered a knee injury while

13  in custody and reported the inability to fully extend his

14  knee.  The Defendant's knee injury led to a cyst abscess on

15  his right knee in November 2021.  The Defendant has also

16  experienced dental issues while in custody and has had several

17  teeth pulled.  The Defendant has no history of any mental or

18  emotional health issues.  Defendant has no history of

19  substance or alcohol abuse.

20           With respect to the nature and circumstances of the

21  offense, the investigation in this case began in August of

22  2014, when agents with the FBI Joint Terrorism Task Force

23  interviewed Mr. Abdurasul A-B-D-U-R-A-S-U-L, Juraboev,

24  J-U-R-A-B-O-E-V, a defendant in the related case, following

25  the agent's discovery of social media posts pledging support

Proceedings                                    18

1     for ISIS.

2              The investigation revealed that Juraboev and another

3     defendant, Saidakhmetov, A-K-H-R-O-R Saidakhmetov,

4     S-A-I-D-A-K-H-M-E-T-O-V, discussed engaging in terrorist acts

5     in the United States and traveling to Syria to fight with

6     ISIS.  The investigation also revealed the involvement of a

7     third defendant in United States v. Juraboev, Abror,

8     A-B-R-O-R, Habibov, H-A-B-I-B-O-V, who employed Saidakhmetov,

9     helped to purchase and plan Saidakhmetov's plane ticket to

10    Turkey and subsequent travel to Syria, and worked with two

11    other Defendants in the Juraboev case, Kasimov and Zakirov,

12    Akmal Zakirov, A-K-M-A-L Z-A-K-I-R-O-B, to raise money for

13    Saidakhmetov's actions in Syria.

14             Throughout late 2014 and early 2015, Juraboev and

15    Saidakhmetov communicated with ISIS representatives and, with

16    the assistance of Habibov, planned to travel to Syria to fight

17    with ISIS.  The FBI Joint Terrorism Task Force investigation

18    revealed the Defendant worked with others to fund

19    Saidakhmetov's efforts to travel to Syria to join ISIS and to

20    raise money from others intended to be used for other

21    individuals to fight on behalf of ISIS in Syria.

22             Toll records reveal the Defendant was in contact

23    with Zakirov and others to discuss providing money and

24    assisting in raising money from others to fund Saidakhmetov's

25    travels.  The Defendant transferred $100 from his bank account

Proceedings                                    19

1    on February 17, 2015, to Zakirov.  The Defendant facilitated

2    the donation of funds in support of Saidakhmetov's travel from

3    two additional individuals.

4         Following the February 2015 arrest of Saidakhmetov

5    and Habibov, intercepted communications reveal the Defendant

6    had discussed manufacturing a cover story in the event any

7    confrontation with law enforcement authorities arose.  The

8    Defendant also changed his phone number the day after the

9    arrest and subsequently informed law enforcement he had

10   stopped using the telephone number after the arrest because he

11   did not know what they were doing.  The Defendant was arrested

12   on August 31 of 2017 at his residence in Illinois.

13        The second 3553(a) factor instructs this Court to

14   consider the need for the sentence imposed:  A, to reflect the

15   seriousness of the offense, to promote respect for the law, to

16   provide just punishment for the offense; B, to afford adequate

17   deterrence to criminal conduct; C, to protect the public from

18   further crimes of the Defendant; and, D, to provide the

19   Defendant with needed educational or vocational training,

20   medical care, or other correctional treatment in the most

21   effective manner.  3553(a)(2) so provides.

22        The instant sentence recognizes the seriousness of

23   the Defendant's offense, which involved support for a

24   designated foreign terrorist organization and implicates

25   national security concerns.  The Court's sentence will deter

Proceedings                                                20

1    others from engaging in similar acts and justly punishes the

2    Defendant for his offense.

3              With respect to the kinds of sentence available, the

4    third 3553(a) factor requires the Court to detail the kinds of

5    sentence available to this Defendant.  The Defendant pled

6    guilty to one count of attempt to provide material support to

7    foreign terrorist organizations, in violation of

8    18 U.S.C. 2339B(a)(1).  For that offense, the Defendant faces

9    a maximum term of imprisonment of 15 years, the maximum term

10   applicable at the time of the Defendant's conduct.

11             The Court may impose a term of supervised release of

12   any years up to life.

13             A term of not less than one nor more than five years

14   of probation may be imposed because the offense is a Class C

15   felony, 18 U.S.C. Section 3561(c)(1).  If probation were to be

16   imposed, the fine, restitution, and community service would

17   have to be imposed as a condition of probation unless the

18   Court found that extraordinary circumstances existed that

19   would make such a condition plainly unreasonable.

20             The Defendant also faces a maximum fine of $250,000

21   under 18 U.S.C. Section 3571(b).  Probation notes the

22   Defendant does not appear to be able to pay such fine.

23             The fourth 3553(a) factor requires the Court to

24   consider and to discuss the kinds of sentence and the

25   sentencing range established for the applicable category of

Proceedings                                    21

1   offense committed by the Defendant as set forth in the

2   guidelines.  The typical guideline for 18 U.S.C. 2339B9(a)(1)

3   offense is United States Sentencing Guidelines, Section 2M, as

4   in Mary, 5.3A, which provides for the base offense level 26.

5           Because the instant offense involved the provision

6   of material support with intent, knowledge, or reason to

7   believe such support would be used to commit or to assist in

8   the commission of a violent act, a two-level increase is

9   warranted under USSG Section 2M5.3B(1)(e).

10           As the instant offense is a felony that was involved

11   or was intended to promote a federal crime of terrorism, a

12   12-level increase is applicable, pursuant to USSG Section

13   3A1.4.  By reference to the Section 3A1.4 application notes to

14   18 U.S.C. Section 2332B(g)(5), a federal crime of terrorism is

15   defined as an offense that:  A, is calculated to influence or

16   to affect the conduct of government by intimidation or

17   coercion or to retaliate against government conduct; and, B,

18   is a violation of 18 U.S.C. Section 2339B relating to

19   providing material support to terrorist organizations.

20           A two-level reduction is warranted pursuant to USSG

21   Section 3E, as an Edward, 1.1 because the Defendant has

22   clearly demonstrated acceptance of responsibility for the

23   offense.

24           A further one-level reduction applies because the

25   Defendant notified the Government in a timely manner of his

Proceedings                                    22

1    intention to enter a plea of guilty.

2              Therefore, the Defendant's total adjusted offense

3    level, as I previously noted, is 37.

4              The Defendant has no prior convictions, resulting in

5    a criminal history score of zero; thus, according to the

6    sentencing table, a criminal history score of zero establishes

7    a criminal history category of I.  However, under USSG Section

8    3A1.4(b), the criminal history category in this case is VI

9    because the instant offense involved was or intended to

10   promote a federal crime of terrorism.

11             An offense level 37 with a criminal history category

12   of VI would result in a guidelines custody range of 360 months

13   to life.  However, because the statutorily authorized maximum

14   sentence is less than the maximum of the applicable guidelines

15   range, the restricted guidelines range is 180 months under

16   USSG Section 5G1.1(a).

17             Probation, as we've heard, recommends a sentence of

18   180 months of incarceration to be followed by two years of

19   supervised release with special conditions.

20             The Government recommends the Court impose the

21   sentence agreed upon in the Defendant's Rule 11(c)(1)(C) plea

22   agreement, which is 132 months of incarceration to be followed

23   by lifetime supervised release.

24             Defense counsel asks this Court to suggest to the

25   Government that it agree to a lower sentence and that a lower

Proceedings                                    23

1   sentence be imposed.  The Court declines to make that

2   suggestion.  Federal Rule of Criminal Procedure 11(c)

3   absolutely precludes Court involvement in plea negotiations.

4        The fifth 3553(a) factor, which requires the Court

5   to evaluate any pertinent policy statement issued by the

6   Sentencing Commission, 18 U.S.C. Section 3553(a)(5) does not

7   apply here with respect to the Defendant's criminal conduct.

8        The sixth 3553(a) factor requires this Court to

9   consider the need to avoid unwarranted sentence disparities

10  among defendants with similar records who have been found

11  guilty of similar conduct.

12        This case arises from the same factual circumstances

13  of the related cases, including United States v. Juraboev,

14  19-CR-95.  And in that action, Juraboev pled guilty to one

15  count of conspiracy to provide material support to a foreign

16  terrorist organization, in violation of 18 U.S.C. 2339B(a)(1),

17  and was sentenced by this Court on October 27, 2017, to 180

18  months of incarceration with no term of supervised release to

19  follow.

20        Defendant Saidakhmetov pled guilty to one count of

21  conspiracy to provide material support to a foreign terrorist

22  organization, in violation of 18 U.S.C. Section 2339B(a)(1),

23  and was sentenced to this Court on December 20 of 2017 to 180

24  months of incarceration with no term of supervision to follow.

25        Defendant Rakhmatov pled guilty to one count of

Proceedings                                            24

1    conspiracy to provide material support to a foreign terrorist

2    organization, in violation of 18 U.S.C. Section 2339B(a)(1),

3    and was sentenced by this Court on January 14 of 2021 to 150

4    months of incarceration followed by a lifetime of supervised

5    release with special conditions.

6          Defendant Kasimov was convicted at the trial by a

7    jury of his peers on Counts One and Two of the third

8    superseding indictment, charging him with conspiracy and

9    attempt to provide material support to a foreign terrorist

10   organization.  Defendant Kasimov was sentenced by this Court

11   on June 3, 2022, to 180 months of incarceration with ten years

12   of supervised release with special conditions.

13         On March 16, 2018, Defendant Zakirov pled guilty to

14   conspiracy to provide material support to a foreign terrorist

15   organization and attempt to provide material support to a

16   foreign terrorist organization, violations of

17   18 U.S.C. Section 2339B(a)(1), and was sentenced by this Court

18   on July 26, 2022, to time served, approximately 102 months of

19   incarceration, followed by two years of supervised release

20   with special conditions.

21         For the reasons stated in this memorandum and order

22   and considering the other six 3553(a) factors, this Court's

23   sentence in this case avoids unwarranted sentence disparities.

24         The final, seventh, 3553(a) factor requires this

25   Court to touch upon the need to provide restitution to any

Proceedings                            25

1   victims of the offense.  That factor does not apply here.

2          The Court, therefore, accepts the parties' Rule

3   11(c)(1)(C) plea agreement and sentences the Defendant to 132

4   months of incarceration followed by lifetime supervised

5   release.

6          The Court will now sign and enter the stipulated

7   judicial order, which is going to be handed up as removal

8   submitted by the parties at the time of sentencing.  That will

9   be Court Exhibit 1 in evidence.

10         The Court will also order the Defendant to pay the

11  $100 mandatory special assessment I'm required to impose, in

12  all caps, but the Court does not impose a fine because the

13  Defendant does not have the ability to pay.

14         This sentence is consistent with and sufficient but

15  not greater than that necessary to accomplish the purposes of

16  3553.  The Court also expressly adopts the factual findings of

17  the presentence investigation report and any addenda thereto,

18  barring any errors contained therein and to the extent they

19  are not inconsistent with the Court's sentence and now directs

20  the probation department to slowly read those provisions into

21  the record.

22         THE PROBATION OFFICER:  The special conditions of

23  supervised...

24         May I proceed?

25         THE COURT:  Yes, you may.  You should address the

```
                    Proceedings                    26
```

1  Court.  I'll let you know when you can go forward.

2        Go ahead.

3        THE PROBATION OFFICER:  The special conditions of

4  supervised release are as follows:

5        The Defendant shall cooperate with and abide by all

6  instructions of immigration authorities.

7        And if deported or excluded, the Defendant may not

8  re-enter the United States illegally.

9        THE COURT:  Does that complete your report?

10        THE PROBATION OFFICER:  This completes the special

11  conditions of supervised release.  Thank you, your Honor.

12        THE COURT:  The Court adopts those.

13        Do you have the order to hand up?

14        MR. HAGGANS:  We do with one exception, which is the

15  Defendant's statement.  I provided that to the defense.

16        Is it ready?

17        (Pause in proceedings.)

18        THE COURT:  I've been handed what has been marked as

19  Court Exhibit 1 for identification, the order of judicial

20  removal, which requests my signature.  Just for good order's

21  sake, since I haven't seen this before, let me -- it's a

22  two-page document.  Let me just read it out loud into the

23  record and see if there are any objections to it or anything

24  we need to modify.

25        The order of judicial removal in this case reads as

Proceedings                                    27

1   follows:   Upon the application of the United States of America

2   by Douglas M. Pravda, J. Matthew Haggans, and Jonathan E.

3   Algor, Assistant United States Attorneys, Eastern District of

4   New York; upon the factual allegations in support of judicial

5   removal; upon the consent of Dilshod Khusanov, the Defendant;

6   and upon all prior proceedings and submissions in this matter;

7   and full consideration having been given to the matter set

8   forth herein, the Court finds:

9           One, the Defendant is not a citizen or national of

10   the United States;

11          Two, the Defendant is a native of Uzbekistan and a

12   citizen of Uzbekistan;

13          Three, the Defendant first entered the United States

14   on or about December 28, 2008, as an F-1 nonimmigrant student

15   at or near John F. Kennedy International Airport in New York;

16          Four, the Defendant adjusted his status to that of a

17   lawful permanent resident on or about December 17 of 2010;

18          Five, at the time of sentencing in the instant

19   criminal proceeding, the Defendant will be convicted in the

20   United States District Court, Eastern District of New York, of

21   one count of attempt to provide material support to a foreign

22   terrorist organization, in violation of 18 U.S.C. Section

23   2339B(6);

24          Six, the maximum sentence for a violation of this

25   statute is 15 years of imprisonment;

Proceedings                                      28

1          Seven, the Defendant is, and at sentencing will be,

2    subject to removal from the United States pursuant to Section

3    237(a)(4)(B) of the Immigration and Nationality Act of 1952

4    ("INA"), as amended, as described in INA Section

5    212(a)(3)(B)(i)(I), as an alien who has engaged in terrorist

6    activity as defined in INA Section 212(a)(3)(B)(iv)(VI)(cc),

7    in that he committed an act that he knows, or reasonably

8    should know, affords material support to a designated foreign

9    terrorist organization; to wit, the Islamic State of Iraq and

10   al-Sham ("ISIS") and Al-Nusrah Front ("AMF");

11         Seven, the Defendant has waived his right to notice

12   and to hearing under Section 238[(d)](c) of the INA, 8 U.S.C.

13   Section 1228[(d)](c);

14         Eight, the Defendant has waived the opportunity to

15   pursue any and all forms of relief and protection from

16   removal.

17         Wherefore, it is hereby ordered, pursuant to Section

18   238[(d)](c) of the INA, 8 U.S.C. Section 1228[(d)](c), that

19   the Defendant shall be removed from the United States promptly

20   upon his release from confinement, or, if the Defendant is not

21   sentenced to a term of imprisonment promptly upon his

22   sentencing, and that the Defendant be ordered removed to

23   Uzbekistan.

24         Dated New York, New York, line, 2022, a signature

25   for my line.

Proceedings                                 29

1          I'm changing New York, New York to Brooklyn, New
2     York.
3          I trust that's acceptable to the parties.
4          MR. LEVITT:  Yes, your Honor.
5          MR. HAGGANS:  It is, your Honor.
6          THE COURT:  I'm dating it today, August 10, 2022.
7     I'm signing it.
8          Motion from the Government to have Court 1 admitted
9     into evidence, please?
10          MR. HAGGANS:  The Government so moves, your Honor.
11          THE COURT:  Any objection?
12          MR. LEVITT:  No, your Honor.
13          THE COURT:  It's admitted.  Thank you.
14          (Court Exhibit 1 so marked.)
15          THE COURT:  With respect to the notice of intent to
16     request judicial removal that was just handed up, do you
17     suggest that that document, together with the Defendant's plea
18     statement in support of judicial removal, be marked as an
19     exhibit, admitted in evidence?
20          I'll ask the Government.
21          MR. HAGGANS:  Yes, your Honor.
22          And with respect to the order, the Government
23     requests that that order be docketed.
24          THE COURT:  Of course.
25          MR. HAGGANS:  Thank you, your Honor.

Proceedings                                    30

1          THE COURT:  So, the notice of intent to request

2    judicial removal, how should we mark that?

3          Should that be Court Exhibit 2?

4          These are documents I'm just being handed now.

5          MR. HAGGANS:  The notice could be 2, the concurrence

6    could be 3, the factual allegations could be 4, and the

7    Defendant's statement could be 5, your Honor.

8          THE COURT:  Is that acceptable to defense counsel?

9          MR. LEVITT:  Yes, your Honor.

10         THE COURT:  We will have them so marked and entered

11   in evidence pursuant to the agreement of counsel.

12         You'll take care of that, Ms. Yu.

13         THE COURTROOM DEPUTY:  Yes, sure.

14         THE COURT:  Thank you very much.

15         (Court Exhibits 2 through 5 so marked.)

16         THE COURT:  Is there anything else from the

17   Government by way of motions that we need to address today,

18   outstanding counts, anything like that?

19         MR. HAGGANS:  Just a couple of housekeeping matters,

20   your Honor.

21         THE COURT:  Yes.

22         MR. HAGGANS:  I believe there is one open count on

23   this indictment, which the Government moves to dismiss.

24         THE COURT:  Any objection?

25         MR. LEVITT:  No, your Honor.

Proceedings                                31

1          THE COURT:  Motion is granted.

2          MR. HAGGANS:  I don't believe there is an underlying

3     indictment, but, out of an abundance of caution, if there is,

4     the Government moves to dismiss that as well.

5          THE COURT:  Any objection?

6          MR. LEVITT:  No, your Honor.

7          THE COURT:  It's granted.

8          MR. HAGGANS:  From my tracking, I believe the only

9     open request is the defense's request for a designation, and

10    the Government takes no position on that request.

11         THE COURT:  I will make that a part of the judgment,

12    Mr. Levitt.  So, that goes into the judgment that will be

13    entered later today.  I'm granting that application on the

14    part of the Defendant.

15         MR. LEVITT:  Yes, thank you, your Honor.

16         The only other request we would make --

17         THE COURT:  I'm going to ask you to pull the

18    microphone a little closer to you, sir.

19         MR. LEVITT:  The only other request we would make --

20    and this is, I guess, more for the Government, I can take it

21    up with them -- they had previously seized or been provided

22    voluntarily by Mr. Khusanov two phones and a computer, and

23    he'd like that to be returned.

24         THE COURT:  I'll let you take that up with the

25    Government.

Proceedings                                          32

1          I touched on this earlier, but I'm particularly

2   sensitive to the dictates of Rule 11(c), which state, and I

3   just wanted to put this in hot verba, as it were, in the

4   record from Rule 11(c) of the Federal Rules of Criminal

5   Procedure, to quote it:  In general, an attorney for the

6   Government and the Defendant's attorney may discuss and reach

7   a plea agreement.  The Court must not participate in these

8   discussions.

9          So, I want to make it very clear.  I know you

10  distinguished counsel realize that, but, also, for my

11  distinguished colleagues on the 17th Floor, I want to make it

12  very clear that I have not participated in your plea

13  negotiations.  They have been carried out by distinguished

14  counsel and the Court appreciates the effort.

15         And I hope that the Defendant appreciates,

16  Mr. Khusanov, the fine job your counsel has done for you in

17  this case as well as the fine job the Government attorneys

18  have done on behalf off the people of the United States.  So,

19  good job all around, including Probation.

20         And I want to thank you all for your patience.

21         Is there anything else we need to address today?

22         MR. HAGGANS:  Not from the Government.  Thank you,

23  your Honor.

24         MR. LEVITT:  One moment, please, your Honor.

25         (Pause in proceedings.)

Proceedings                                                      33

1            MR. LEVITT:  Nothing else, your Honor.

2            THE COURT:  Thank you.  We're adjourned.  Stay safe,

3    everyone.

4

5            (Matter concluded.)

6

7

8                              ooo0ooo

9

10

11   *I (we) certify that the foregoing is a correct transcript*
     *from the record of proceedings in the above-entitled matter.*

12
     */s/ Linda A. Marino*              *August 26, 2022*
13     *LINDA A. MARINO*                     *Date*

14

15

16

17

18

19

20

21

22

23

24

25