UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,      :
        :
      v.        :   **MEMORANDUM & ORDER**
        :   17-CR-475 (WFK)
DILSHOD KHUSANOV,      :
        :
        Defendant.     :
-------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 12, 2024, Dilshod Khusanov ("Defendant") filed a motion to reduce his sentence and void the removal provisions of his plea agreement. Mot. & Mem. to Reduce Sentence & Void the Plea Agreement Removal Provisions ("Def. Mem."), ECF Nos. 149, 150, 153, 154. The Government opposes Defendant's motions. Gov't Opp'n to Mot. to Reduce Sentence ("First Gov't Opp'n"), ECF No. 158; Gov't Opp'n to Mot. to Void Removal Provisions ("Second Gov't Opp'n"), ECF No. 159. For the reasons discussed below, the Court DENIES Defendant's motions.

## I.    BACKGROUND

In 2014, agents from the Federal Bureau of Investigation's ("FBI's") Joint Terrorism Task Force conducted an investigation into individuals in the United States who had connections with, or offered support to, the Islamic State of Iraq and al-Sham ("ISIS"). *United States v. Khusanov*, 17-CR-475, 2022 WL 3228270, at *3-4 (E.D.N.Y. Aug. 10, 2022) (Kuntz, J.); *see also* ECF No. 139 at 6. The FBI agents found Defendant worked with others to provide support to a certain individual who was convicted of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1). *Khusanov*, 2022 WL 3228270, at *4, 6. Specifically, "Defendant worked with others to fund [the individual's] efforts to travel to Syria to join ISIS and to raise money from others intended to be used for other individuals to fight on behalf of ISIS in Syria." *Id.* at *4. Defendant contributed approximately $200 to $400 to finance the "would-be ISIS supporter's travels." *United States v. Khusanov*, 731

F. App'x 19, 21, 23 n.1 (2d Cir. 2018) (summary order) (affirming the Court's denial of Defendant's bail pending trial); *see also* ECF No. 27 at 4, 4 n.1.

On August 29, 2017, a grand jury returned a two-count Indictment charging Defendant with (1) Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count One); and (2) Attempt to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1) (Count Two). Indictment, ECF No. 1.

On October 18, 2021, Defendant pled guilty to Count Two of the Indictment pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Plea Agreement, ECF No. 126. Under the Rule 11(c)(1)(C) plea agreement, Defendant and the Government agreed to a sentence of 132 months of imprisonment and a supervised release term of life. Plea Agreement ¶ 2. In addition, the parties agreed to the entry of a judicial order of removal. *Id.* ¶¶ 3, 5-11. The plea agreement stated, "[a]fter consultation with counsel and understanding the legal consequences of doing so, the defendant knowingly and voluntarily . . . waives any and all rights to appeal, reopen, reconsider, or otherwise challenge the stipulated judicial order of removal," *id.* ¶ 6, and the "defendant agrees to waive his rights to any and all forms of relief or protection from removal" including the ability to apply for removal relief or protection, such as, among other things, "any protection from removal pursuant to Article 3 of the United Nations Convention Against Torture," *id.* ¶ 7. The Court accepted the parties' Rule 11(c)(1)(C) plea agreement. Minute Entry on Oct. 18, 2021.

On August 10, 2022, the Court sentenced Defendant to 132 months of imprisonment followed by a lifetime term of supervised release. Minute Entry on Aug. 10, 2022; *Khusanov*,

2022 WL 3228270, at *1.  That same day, the Court also entered the judicial order of removal.
ECF No. 141.

On August 12, 2024, Defendant filed a motion to reduce his sentence and void the
removal provisions of his plea agreement.  Def. Mem.  As part of his memorandum of law,
Defendant attached exhibits, including:  a letter from himself; letters of support from his family
members; reports regarding his son's severe autism; family medical records; prison disciplinary
records, certificates of completion, and a recidivism risk assessment; his affirmation; and a
prison letter regarding administrative exhaustion.  Exs. A-G, ECF Nos. 154-1—154-7; Exs. A-G,
ECF Nos. 150-1—150-7; Ex. F, ECF No. 153-1.  The Government filed its responses to
Defendant's motions on September 27, 2024.  First Gov't Opp'n; Second Gov't Opp'n.  On
November 8, 2024, Defendant filed his reply.  ECF Nos. 167, 168 ("Reply").  On November 26,
2024, the Court held oral argument on the motions.  Minute Entry on Nov. 26, 2024; *see also*
ECF No. 165 (waiving Defendant's appearance at oral argument); Oral Argument Tr. ("Tr.") at
37, ECF No. 169 (parties declining the Court's offer to submit supplemental briefing).

## II.    LEGAL STANDARDS

### A.  Applicable Law for a Motion to Reduce Sentence

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), permits a court to modify
a term of imprisonment.  A defendant, after exhausting his administrative remedies, may file a
motion for compassionate release by arguing "extraordinary and compelling reasons warrant
such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the factors set
forth in 18 U.S.C. § 3553(a) to the extent they are applicable.  *Id.* § 3582(c)(1)(A).  A defendant
"has the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence
exist."  *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (McMahon, C.J.).

The United States Sentencing Commission (the "Commission") has provided "helpful guidance" for determining whether extraordinary and compelling circumstances exist, although this guidance does not bind the district court. *United States v. Eliopoulos*, 19-CR-651, 2024 WL 1638550, at *2 (S.D.N.Y. Apr. 16, 2024) (Swain, C.J.). The Commission's guidance evaluates extraordinary and compelling reasons in the context of: "Medical Circumstances of the Defendant," "Age of the Defendant," "Family Circumstances of the Defendant," "Victim of Abuse," "Unusually Long Sentence," and "Other Reasons." U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") §1B1.13(b) (Policy Statement). Pertinent to the instant motion, family circumstances may represent extraordinary or compelling circumstances for a defendant in cases involving:

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs [(A) through (C)] exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the

individuals listed in paragraphs [(A) through (C)] as well as a grandchild, grandparent, or sibling of the defendant.

*Id.*

However, the Court is not limited by the factors in Guidelines §1B1.13 and has "broad discretion" in evaluating a motion to reduce sentence. *United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022). The Court may also "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." (quoting 28 U.S.C. § 994(t))).

Even if extraordinary and compelling reasons exist, the court is "still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Israel*, 05 CR 1039, 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) (McMahon, C.J.).

### B. Applicable Law for a Motion to Void Removal Provisions

Pursuant to 28 U.S.C. § 2255, a prisoner who is in federal custody may move the sentencing court to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Section 2255 provides a mechanism for federal prisoners to vacate sentences imposed in violation of the

laws or Constitution of the United States." *Hardy v. United States*, 878 F.2d 94, 96 (2d Cir. 1989).

Section 2255 includes a one-year statute of limitation period, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The requirements for a plea allocution are outlined in Rule 11 of the Federal Rules of Criminal Procedure. *See Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007). Among other things, Rule 11 requires a defendant enter into a plea voluntarily and understanding the consequences of his plea. Fed. R. Crim. P. 11(b). The Second Circuit in *Zhang* outlined two requirements for defendants to successfully challenge a guilty plea based on a Rule 11 violation. *Zhang*, 506 F.3d at 168. The first prong requires defendants establish a Rule 11 violation. *Id.* (holding the Rule 11 violation must have "constituted a 'constitutional or jurisdictional' error, or establish that the error resulted in a 'complete miscarriage of justice,' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" (quoting *United States v.*

6

*Timmreck*, 441 U.S. 780, 783 (1979)).  The second prong requires defendants demonstrate the Rule 11 violation was prejudicial.  *Zhang*, 506 F.3d at 168 ("[W]here the error was not preserved, this requires the petitioner to show that 'the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.'" (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)).

The All Writs Act, 28 U.S.C. § 1651, is "a residual source of authority to issue writs that are not otherwise covered by statute."  *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  Indeed, "where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  *Id.*  In the instant case, Defendant mentions two particular writs—coram nobis and audita querela.

"Coram nobis is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors . . . of the most fundamental character have rendered the proceeding itself irregular and invalid."  *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks omitted).  A petitioner seeking relief pursuant to coram nobis must show:  (1) "there are circumstances compelling such action to achieve justice;" (2) "sound reasons exist for the failure to seek appropriate earlier relief;" and (3) "the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."  *Id.* at 79 (internal citations and quotation marks omitted).  Coram nobis "is an extraordinary remedy . . . typically available only when habeas relief is unwarranted because the petitioner is no longer in custody."  *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (internal citation and quotation marks omitted).

Similarly, "the writ of audita querela 'remain[s] available in very limited circumstances with respect to criminal convictions.'"  *Mora v. United States*, 358 F. App'x 223, 224 (2d Cir.

7

2009) (summary order) (quoting *United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir. 1995).

"Audita querela is probably available where there is a legal, as contrasted with an equitable,

objection to a conviction that has arisen subsequent to the conviction and that is not redressable

pursuant to another post-conviction remedy." *LaPlante*, 57 F.3d at 253; *see also United States v.*

*Quintieri*, 547 F. App'x 32, 33 (2d Cir. 2013) (summary order) ("The writ [of audita querela] is

generally not available to review a criminal conviction if the petitioner could have raised his or

her claims in a 28 U.S.C. § 2255 motion.").

## III.    DISCUSSION

### A. Motion to Reduce Sentence

Defendant has served seven years of his eleven-year sentence (approximately 75%), and

now requests the Court reduce his sentence to time-served and reduce his lifetime term of

supervised release to two years. Def. Mem. at 3-4. Pursuant to 18 U.S.C. § 3582(c)(1)(A),

Defendant argues his sentence should be reduced because (1) extraordinary and compelling

circumstances exist, and (2) the § 3553(a) factors warrant such a reduction. *Id.* at 3.

As a threshold matter, the Court agrees with Defendant it has the authority to reduce

Defendant's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) because Defendant exhausted his

administrative remedies. *See* Def. Mem. at 24. Specifically, Defendant met the exhaustion

requirement because the Bureau of Prisons denied the administrative application for

compassionate release he filed on February 23, 2024 and more than 30 days have elapsed since

that application was made. *Id.*; *see* Ex. G to Def. Mem. (prison letter regarding administrative

exhaustion).

1.  **Defendant's Circumstances Are Not Extraordinary and Compelling to Warrant a Sentence Reduction**

In arguing extraordinary and compelling circumstances exist warranting a sentence reduction, Defendant directs the Court's attention to: (1) his family circumstances; (2) his conditions of confinement; (3) disparate supervised release terms as compared to his co-defendant; and (4) his rehabilitation. *Id.* at 26 ("Independently, or together with other circumstances, courts have routinely found these circumstances extraordinary and compelling.").

*i.    Family circumstances*

Defendant argues he satisfies U.S.S.G. §1B1.13(b)(3)'s criteria for extraordinary and compelling circumstances based on the "Family Circumstances of the Defendant" because his family circumstances "are indeed dire" due to his son's severe autism. Def. Mem. at 26; *see also* Reply at 1. Defendant argues his son requires Defendant's in-person support and there is no one else who can provide his son sufficient care. Def. Mem. at 26. Defendant argues his wife is unable to care for their son both because of the severity of their son's condition and because "she has serious health problems of her own." *Id.* The parents of Defendant and his wife are also not suitable caregivers because they are "aging and infirm." *Id.* The siblings of Defendant and his wife also cannot provide sufficient care because they "have their own lives and jobs that render them unable to provide the constant, intense care" Defendant's son requires. *Id.* Defendant also states his family is unable to afford "professionals to fill these gaps and such professionals are not available to them without charge." *Id.*

For support, Defendant cites primarily to *United States v. Hasanoff*, 10-CR-162, 2020 WL 6285308, at *1 (S.D.N.Y. Oct. 27, 2020) (Wood, J.). Def. Mem. at 27. In *Hasanoff*, the defendant had served ten years of an eighteen-year sentence following his guilty plea for

providing material support to al-Qaeda, wherein Hasanoff, along with his co-defendant, funneled approximately $67,000.00 to al-Qaeda. *Id.* at 28. Defendant notes in *Hasanoff* the defendant argued "a combination of his rehabilitation and the death of his father, which left him as the sole available caregiver for his incapacitated mother" constituted extraordinary and compelling reasons for compassionate release. *Id.* According to Defendant, the court in *Hasanoff* agreed and granted compassionate release based on defendant Hasanoff's "mother's medical records (including a letter from her neurologist) detailing the severity of her condition and inability to independently practice self-care, as well as affidavits from family attesting to their inability to care for her due to their own childcare and work responsibilities." *Id.* at 27 (citing *Hasanoff*, 2020 WL 6285308, at *3-5). Defendant argues the Court should similarly grant him compassionate release: not only is Defendant's situation similar to Hasanoff's in terms of their rehabilitation and being the "only viable caregivers" for an incapacitated loved one, but Defendant's conduct underlying the instant offense was less severe than Hasanoff's. *Id.* at 29.

In his reply, Defendant adds his son has "become stronger and more aggressive" as he has grown older, meaning the situation has become more dire and will only increase over time. Reply at 4. In light of this, Defendant argues his presence has become increasingly important because he is more able than his wife to physically and emotionally control their son. *Id.* at 4-5; *see also* Ex. A to Reply (wife's letters describing and providing pictures of the increasingly aggressive behavior exhibited by Defendant's son).

The Court finds Defendant's family circumstances are serious but are not sufficiently extraordinary and compelling to warrant a sentence reduction. There is no doubt Defendant's wife faced significant health challenges in the past. At oral argument, defense counsel also stated Defendant's wife's condition has shown recent signs for concern. *See* Tr. at 33-34.

However, Defendant's wife's medical records, Ex. D to Def. Mem. at 4, ECF No. 154-4, indicate her surgery occurred in March 2021—more than six months before Defendant pled guilty on October 18, 2021 pursuant to Rule 11(c)(1)(C) and more than one year before this Court sentenced Defendant on August 10, 2022. Defendant's wife currently cares for their son while living with her brother and his family in the United States. *See* Tr. at 34. As the Government noted at oral argument, *id.* at 25, she is able to take their son to some of his appointments, *see* Ex. A to Reply at 6-7.

Defendant states his presence is needed at home to care for his son and "provide financial support." Reply at 12. However, Defendant has not presented documentation for how he will provide the necessary financial support. In a letter attached to his reply, Defendant asserts a friend offered him a job as a trucking dispatcher, and Defendant plans to become certified as a fitness trainer and "seek employment in a gym or fitness facility" upon release. Ex. B to Reply at 5. At oral argument, defense counsel made only general statements that Defendant "would be employed" after his release and "can work remotely," without explaining how working at a gym or fitness facility would allow him a remote-work opportunity. Tr. at 15. In contrast, the defendant in *Hasanoff* demonstrated (1) he was the only remaining caregiver for his mother after the death of his father, and (2) "submitted evidence of an employment offer from a convenience store distribution business, which state[d] that his work 'can be done remotely if need be to help facilitate [Hasanoff's] caring for his mother.'" *Hasanoff*, 2020 WL 6285308, at *5. Similarly, Defendant's reliance in his reply on *United States v. Nunes* is misplaced because the caregiver in that case was bedridden due to her cancer. *See* 23-CR-517, 2024 WL 4504493, at *2 (S.D.N.Y. Oct. 16, 2024) (Torres, J.); *see also* Reply at 11-12.

11

Although Defendant's son's condition is serious and challenging, Defendant has not demonstrated his wife is presently incapacitated and Defendant would be the only available caregiver. *See United States v. Veliu*, 17-CR-404-1, 2022 WL 2484240, at *4-5 (E.D.N.Y. July 6, 2022) (Matsumoto, J.) (denying motion for compassionate release where defendant claimed his family "suffer[ed] unprecedented calamities" based, in part, on his wife's cancer surgery and son's autism (internal quotation marks omitted)); *United States v. Rojas*, 19-cr-467, 2022 WL 14784607, at *4 (S.D.N.Y. Oct. 26, 2022) (Castel, J.) (concluding circumstances were not extraordinary and compelling while "acknowledg[ing] the very real challenges facing [defendant's] family" due to struggles with finances and the daughter's autism).

### ii.    Conditions of confinement

In addition to Defendant's son's medical needs, Defendant argues several other factors warrant compassionate release.  Def. Mem. at 29.  While these factors were present at the time Defendant was sentenced, Defendant argues the Court was not able to consider them because he pled guilty pursuant to Rule 11(c)(1)(C).  *Id.*

Defendant argues the "horrid" conditions at the Metropolitan Detention Center ("MDC") constitute extraordinary and compelling circumstances.  *Id.* at 30.  Defendant points to two particularly difficult periods during his incarceration, both of which occurred or began before he was sentenced in August 2022.  The first is the "blackout" in 2019 when a winter storm knocked out the MDC's power and Defendant "spent nearly ten days with no light, heat, hot water, or showers and no access to email or the phones" and was "completely cut off from the outside world."  *Id.*  The second period Defendant points to is the COVID-19 pandemic, which led to "dangerous, sometimes life-threatening environments," including repeated lockdowns, a lack of

12

programming, long periods without social and legal visits, and a "frightening and hostile atmosphere." *Id.* at 31.

As the Government notes, First Gov't Opp'n at 8, Defendant raised arguments regarding both the MDC blackout and the COVID-19 pandemic in his sentencing memorandum in August 2022, Def. Sentencing Mem. at 2, ECF No. 136 ("He lived through the horrific MDC blackout of 2019, and has suffered through the COVID-19 scourge, contracting the virus in jail and being subjected to numerous lockdowns and quarantines."). The Court previously considered these arguments and rejected Defendant's request at sentencing for "the Court to suggest to the Government that it agree to a lower sentence and that a lower sentence be imposed." *Khusanov*, 2022 WL 3228270, at *5. Although Rule 11(c) precludes the Court from involving itself in plea negotiations, the Court could have rejected the parties' plea agreement if the Court believed the agreement's terms were improper. The Court declined to do so, and sees no reason to change its position now. Beyond these previously raised issues at the MDC, Defendant has not submitted any concerns with his current conditions of confinement at a different federal facility. *See* First Gov't Opp'n at 3 ("[Defendant] is currently incarcerated at Federal Correctional Institution Oakdale II.").

### iii.    *Disparate supervised release terms*

Next, Defendant argues extraordinary and compelling circumstances exist because of the disparity in supervised release terms between himself and his co-defendant Azizjon Rakhmatov. Def. Mem. at 33. On July 26, 2023, this Court reduced Rakhmatov's term of supervised release from life to two years after the Second Circuit remanded the case for re-sentencing on the supervised release term and related special conditions. *United States v. Rakhmatov*, 15-CR-95-6, 2023 WL 4763384, at *1 (E.D.N.Y. July 26, 2023) (Kuntz, J.) (maintaining Rakhmatov's

original custodial sentence of 150 months); *see also United States v. Rakhmatov*, 21-151, 21-167, 2022 WL 16984536 (2d Cir. 2022) (summary order). Because Defendant "is now the only remaining defendant in this case with a lifetime term of supervised release," he argues there is "an unwarranted disparity with similarly situated co-defendants." Def. Mem. at 34.

There is a simple, justifiable reason for the disparity in supervised release terms. Defendant pled guilty *pursuant to Rule 11(c)(1)(C)*, meaning he agreed to a specific sentence that included a supervised release term of life. Plea Agreement ¶ 2. In contrast, Rakhmatov did not plead guilty *pursuant to Rule 11(c)(1)(C)*, meaning the Court determined (and later revised on remand) Rakhmatov's term of supervised release. *See generally* Rakhmatov Plea Agreement, ECF No. 368, 15-CR-95. Therefore, the Court finds the disparity in supervised release terms between Defendant and Rakhmatov does not represent an extraordinary and compelling reason for a sentence reduction.

### iv.    *Rehabilitation*

Defendant argues his rehabilitation, in combination with the prior circumstances, warrants a sentence reduction. Def. Mem. at 3. His rehabilitation, according to Defendant, is demonstrated by records from the Bureau of Prisons ("BOP") and letters of support from certain MDC staff and fellow inmates. *Id.* at 17-20; Exs. B, E to Def. Mem. Defendant notes he has no disciplinary history during his incarceration and has been classified by the BOP as being at low risk of recidivism. *Id.* at 17. At the Federal Correctional Institution Oakdale II, Defendant works as a law library clerk and is the elected representative of the Muslim community in the facility. *Id.* He speaks to prison officials on behalf of the community and "intermediates between various inmate groups to maintain a peaceful and respectful atmosphere in the prison." *Id.*

The Court has no reason to doubt Defendant's rehabilitation and commends him on it. Nevertheless, because none of the previously discussed factors are extraordinary and compelling to justify a sentence reduction, "rehabilitation of [Defendant] alone shall not be considered an extraordinary and compelling reason" for a sentence reduction under § 3582(c)(1)(A). 28 U.S.C. § 994(t); *see also Brooker*, 976 F.3d at 237-38.

### 2. Section 3553(a) Factors Do Not Weigh In Favor of a Sentence Reduction

Lastly, Defendant argues the § 3553(a) factors, specifically the first and second § 3553(a) factors, warrant a sentence reduction. As to the first factor—"the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1)—Defendant states he does not seek to minimize his offense conduct, but argues it is "fair to also recognize the offense conduct consisted of providing a small sum of money sourced from himself and others, to assist someone he believed wanted to fight the murderous regime of an evil dictator responsible for torturing and killing tens of thousands of innocent people," Def. Mem. at 35 (referring to the former Syrian leader Bashar al-Assad).

The Government argues Defendant minimizes his conduct when he argues he "did not intend to hurt Americans but wanted to support the fight against Bashar al-Assad in Syria." First Gov't Opp'n at 11. According to the Government, this is belied by the fact ISIS was infamous for "perpetrating attacks against western interests and for brutally beheading westerners." *Id.* The Government further argues, "[d]espite the defendant's claims, the evidence does not suggest that the person whose travel he financed . . . sought to join [ISIS] to fight Assad," nor does the evidence suggest Defendant took steps to ensure the money he provided would be used to fight Assad. *Id.*

15

In his reply, Defendant includes another letter from himself, stating, in part, he apologizes "if [he] failed to fully express [his] remorse" in his first letter and does not intend to "minimize [his] conduct in any way." Reply at 17. Instead, Defendant takes full responsibility for his "immature and wrong decisions." *Id.* at 18; *see also* Ex. B. to Reply.

The Court acknowledges Defendant's remorse for his conduct, but agrees with the Government there is no evidence in the record Defendant attempted to ensure the money he provided was meant to fight only against Assad. In addition, given the well-known publicization of ISIS's extreme violence, including against civilians from the Middle East and the West, during the time Defendant attempted to provide material support to ISIS, the Court is highly skeptical of Defendant's claim that he had no intent "to harm any innocent person or any American" and instead held only "compassion and empathy toward oppressed and persecuted civilians of Syria." Ex. A to Def. Mem. at 3.

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). As to this factor, Defendant argues the time he has already served "reflects the seriousness of his offense, provides just punishment and adequately promotes respect for the law." Def. Mem. at 36. In addition, Defendant argues his recidivism scores are "well below the threshold" of general risk and violent risk scores for defendants otherwise eligible for early release. *Id.* at 37. In terms of general deterrence, Defendant argues "it is hard to imagine a person contemplating an offense similar to

16

Defendant's" given the punishment Defendant has already faced, including "seven years in prison, the horror of a deteriorating family, suffering through MDC's blackout and COVID, and more." *Id.*

At Defendant's sentencing, the Court recognized "the seriousness of the Defendant's offense, which involved support for a designated foreign terrorist organization and implicates national security concerns." *Khusanov*, 2022 WL 3228270, at *4. The Court sees no reason to alter this determination. Defendant has not raised arguments regarding the remaining § 3553(a) factors, and the Court similarly finds no reason to revise its analysis of these factors from the time of sentencing. *See id.* at 4-6. Even if Defendant's circumstances were extraordinary and compelling such that the Court *could* reduce Defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)—which, as discussed above, the Court does not find—the § 3553(a) factors would not weigh in favor of such a reduction.

### B. Motion to Void Plea Agreement Removal Provisions

#### 1. Defendant Entered into the Plea Agreement's Removal Provisions Knowingly and Voluntarily

Defendant's plea agreement included provisions requiring him to waive claims under the Convention Against Torture and consent to a judicial order of removal. Plea Agreement ¶¶ 3, 5-11. However, Defendant now argues these provisions "were not entered into knowingly and voluntarily" and seeks to void these provisions pursuant to 28 U.S.C. § 2255. Def. Mem. at 37. If relief under § 2255 is not available, Defendant alternatively seeks relief under the All Writs Act, 28 U.S.C. § 1651, such as coram nobis and audita querela, Def. Mem. at 37 n.10.

#### 2. Relief is Not Warranted under 28 U.S.C. § 2255

##### i.  *Procedural Bar*

17

Defendant argues he satisfies the procedural requirements of § 2255, specifically the one-year statute of limitations, because he brings "the instant motion within one year from 'the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.'" Def. Mem. at 38 (quoting 28 U.S.C. § 2255(f)(4)).  In support, Defendant cites "oral statements made by the Government at Rakhmatov's July 2023 resentencing, the transcript of which was published on PACER on August 11, 2023." *Id.*

The Government argues Defendant's § 2255 petition is untimely because Defendant filed his motion on August 12, 2024—a year and one day after the transcript of the Rakhmatov resentencing "first became publicly available on August 11, 2023." Second Gov't Opp'n at 8-9.  In addition, the Government argues Defendant could not have learned about the Government's "supposed 'knowledge'" of the potential harm Defendant faced because, as described below, Defendant misinterpreted the Government's statements at Rakhmatov's resentencing. *Id.* at 9. ("At most, the government's statements revealed that another defendant in another case, not involving Uzbekistan, had received relief from deportation under the Convention Against Torture.").  However, the availability of removal relief was already known to Defendant before August 11, 2023, argues the Government, because Defendant submitted a Plea Statement in Support of Judicial Removal, when he was sentenced on August 10, 2022. *Id.* at 9 (citing Plea Statement, ECF No. 140-3).  That statement included a waiver from Defendant of all rights to relief from removal, including from "any protection from removal pursuant to Article 3 of the United Nations Convention Against Torture." *Id.*  The Government argues Defendant's petition would also be untimely even if it was based on a correct interpretation of the Government's letter to the Court, because the letter was filed on the public docket on June 2, 2023. *Id.* at 10.  Lastly, the Government addresses Defendant's claim in his affirmation

18

regarding hearing from another inmate on August 5, 2023 about the warning Rakhmatov

received from the Uzbekistan consulate not to return to Uzbekistan due to credible threats of

harm.[1]  *Id.*  Even if that claim were accurate, the Government argues, it would have occurred

more than a year before Defendant filed his § 2255.  *Id.*

In his reply, Defendant argues the earliest he could have learned of these alleged facts

supporting his claim "was when he received Rakhmatov's sentencing transcript, which

[Defendant's] wife received on or about September 22, 2023 and then mailed to [him]; [he] does

not recall precisely when he received the transcript from his wife."  Reply at 24.

Assuming the statements made at Rakhmatov's resentencing supported Defendant's

claim, the Court finds the exercise of due diligence in this case means the one-year statute of

limitation under § 2255 began when the resentencing transcript became publicly available, which

was on August 11, 2023.  Defendant narrowly missed the one year mark from this date and

therefore his petition is untimely.

### ii.    Merits

Even if Defendant had timely filed his § 2255 petition at least one day earlier,

Defendant's petition would fail on the merits.

Defendant argues the Government's statements at Rakhmatov's resentencing on the issue

of supervised release show the Government knew, at the time of Defendant's sentencing, he

would face "credible threats of physical harm, including torture or death," if he were removed to

Uzbekistan.  Def. Mem. at 38.  According to Defendant, not only did this mean the Government

---

[1] On August 21, 2024, Defendant filed an affirmation, stating, among other things, another inmate informed him on August 5, 2023 Rakhmatov received a warning from a representative of the Uzbekistan consulate not to return to Uzbekistan because Rakhmatov would face torture or worse.  Ex. F to Def. Mem., ECF No. 153.

violated *Brady*, but also the removal order and waiver are "unconscionable and therefore unenforceable as a matter of public policy." *Id.*

Defendant argues the Government "acknowledged" the danger Defendant would face upon removal in its written submissions to the Court and in oral arguments at the Rakhmatov resentencing proceedings. *Id.* at 39. According to Defendant, the Government wrote to the Court it "was aware that 'in multiple cases, noncitizen defendants who have committed even serious terrorism crimes have been granted relief from deportation by immigration judges under the Convention Against Torture,' including 'other defendants in this case [who] . . . the government no longer believes . . . likely will be deported after imprisonment.'" *Id.* at 40. Therefore, Defendant argues the Government knew Defendant "faced the real possibility of harm were he to be deported to Uzbekistan upon release," even though the Government insisted Defendant acknowledge he was unaware of such harm and waive his rights to relief from removal under the Convention Against Torture. *Id.*

In addition, Defendant points to the Government's statements made at Rakhmatov's resentencing hearing. *Id.* at 41. Specifically, Defendant argues the Government confirmed to the Court Rakhmatov might not be deported because the destination country was Uzbekistan—the implication being a defendant subject to removal to Uzbekistan may qualify for relief under the Convention Against Torture. *Id.* Despite this implication, Defendant argues the Government asked the Court to allow Rakhmatov to waive claims under the Convention Against Torture. According to Defendant, the Court "categorically reject[ed] the Government's suggestion that [Rakhmatov] agree to waive his right to seek relief from removal" from the United States to Uzbekistan because of "the Court's concern that Rakhmatov might face serious repercussions down the road were he to be removed." *Id.* at 41 (citing Rakhmatov Resentencing

Tr. at 17, ECF No. 593, 15-CR-95).  Defendant argues the Court should "remove the similar

waiver extracted from Mr. Khusanov when he plead guilty."  Def. Mem. at 41-42.

The Court agrees with the Government that Defendant's "motion is based on a

misreading and misinterpretation of statements made by" the Government related to

Rakhmatov's resentencing.  Second Gov't Opp'n, at 6.  Defendant "used selective editing" to

suggest the Government "changed its approach for Rakhmatov's co-defendants because it

believed that those co-defendants specifically might receive relief under the Convention Against

Torture, implying that the [G]overnment believed that those defendants would be subject to

torture were they sent back to Uzbekistan."  *Id.*  Defendant "used ellipses to remove the []

language, which makes clear that the [G]overnment's approach applied to all terrorism cases, not

merely to Rakhmatov's co-defendants (and by extension, Khusanov)."  *Id.* at 7.  Regarding the

oral statements at Rakhmatov's resentencing, Defendant quoted from the colloquy between the

Court and the Government regarding a case in front of District Court Judge Nicholas Garaufis,

which "did not involve Rakhmatov's or Khusanov's co-conspirators.  It did not involve

Uzbekistan at all."  *Id.*  Instead, the Government raised the other case as an example to explain

"it 'is now operating under the *assumption* that a defendant who is from a country like

Uzbekistan where there have been *allegations* that individuals might be tortured, or their human

rights might be violated upon their return to Uzbekistan in light of the conduct that was at issue

in this case, there is the possibility that those defendants [might receive] immigration relief under

the [C]onvention [A]gainst [T]orture.'"  *Id.* at 7-8 (citing Rakhmatov Resentencing Tr. at 8-

9).  Lastly, the Court agrees with the Government that the alleged statement regarding the

Uzbekistan consulate's warning is not credible because it contains "multiple levels of hearsay

and relies on the improbable notion that the Uzbekistan consulate (which is part of the

government of Uzbekistan) advised an individual that the same government would torture that individual if he returned to Uzbekistan." Second Gov't Opp'n at 13. In its papers and at oral argument for the instant motion, the Government states it never had, and currently does not have, any information suggesting Defendant faces "credible threats of physical harm, including torture or death, were he to be removed to Uzbekistan." *Id.* at 18; *see also* Tr. at 18.

In his reply, Defendant argues the Government, despite denying having information about specific threats to Defendant, is not responsive to Defendant's concerns regarding threats to similarly situated defendants removed to Uzbekistan. Reply at 21. The Government, according to Defendant, "attempts to spin its acknowledgment that the '[S]tate [D]epartment has a concern that' removed defendants, convicted of certain offenses, might face torture in Uzbekistan into a reflection of the Government's concern merely that defendants would make such allegations in an effort to obtain relief under the Convention Against Torture." Reply at 21-22. However, at oral argument, the Government responded it was not drawing a "fine line" between threats against Defendant specifically and threats against similarly situated defendants generally. Tr. at 19 ("When I say I'm not aware of any information if he faces a credible threat, I mean Mr. Khusanov or somebody in his shoes. So I just want to make that clear at the outset.").

In arguing his plea was unknowing and involuntary, Defendant does not invoke Federal Rule of Criminal Procedure 11 and the requirements for invalidating a plea allocution outlined in *Zhang v. United States*, 506 F.3d 162 (2d Cir. 2007). Instead, Defendant argues he meets the standard outlined in the out-of-circuit case *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006), which provides a similar framework for when an inmate may collaterally attack his sentence based on an unknowing or involuntary plea. Def. Mem. at 42-46.

However, within the Second Circuit, the standard for determining if a defendant entered into a plea voluntarily and understanding the consequences of his plea is whether (1) there occurred a violation of Rule 11 and (2) that violation was prejudicial. *See Zhang*, 506 F.3d at 168; *see also United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005). As to the first prong, the Court has found Defendant relies on a misreading and misinterpretation of the Government's position at Rakhmatov's resentencing. Because the Government had no information then or now regarding Defendant facing adverse consequences upon his removal to Uzbekistan, there is no Rule 11 violation. Without a Rule 11 violation, the second prong also fails. Therefore, Defendant fails to show his plea was made unknowingly or involuntarily, and that he was prejudiced as a result.

### 3. Relief is Not Warranted under the All Writs Act

In the alternative, Defendant seeks relief under the All Writs Act with a brief citation to coram nobis and audita querela in a footnote. Def. Mem. at 37 n.10. However, Defendant provides no further argument or analysis under these alternative avenues of relief. *See generally* Def. Mem.; Reply. According to the Government, coram nobis and audita querela are unavailable to Defendant because "neither writ is intended to substitute for a claim under Section 2255 and neither writ is available to" Defendant. Second Gov't Opp'n at 16. The Court agrees with the Government: Defendant is not entitled to relief under the All Writs Act. A writ of coram nobis is not available because Defendant remains in custody. *See Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998) ("Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."). A writ of audita querela is also not available because "the writ is generally not available to review a criminal

23

conviction when the petitioner could have raised his or her claims in a 28 U.S.C. § 2255 motion." *Persico v. United States*, 418 F. App'x 24, 25 (2d Cir. 2011) (summary order) ("Courts have determined that audita querela is not available even in those cases where a petitioner is precluded from raising his or her claims in a successive § 2255 motion because a previous § 2255 motion was denied on the merits.").

Because Defendant failed to show his waiver of his right to challenge the order of removal and removal itself was made involuntarily or unknowingly, the Court finds the plea agreement's waiver is valid and enforceable. *See Salcido-Contreras v. United States*, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstance, however, may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.").

The Court declines to issue a certificate of appealability as to Defendant's § 2255 petition because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

## IV.    CONCLUSION

In sum, the Court finds:

1. To secure a below-Guidelines sentence of 132 months of incarceration as opposed to 180 months of incarceration, this Defendant knowingly and intelligently, with advice of counsel, waived his right to object to his immediate removal to Uzbekistan;

2. At oral argument, defense counsel admitted Defendant's wife travelled to Uzbekistan with her family so, if removed there, Defendant could be with them;

3. As an officer of the Court, Assistant U.S. Attorney Douglas Pravda established on the record the lack of either a particular or a general threat to this Defendant upon his return to Uzbekistan;

4. Defendant failed to present any credible evidence or argument why his below-Guidelines sentence of 132 months, a sentence substantially below the sentences his fellow ISIS supporters and sympathizers received in this case, should be reduced; and

5. To delete the agreed upon removal waiver in this case would violate the structure of Federal Rule of Criminal Procedure 11(c)(1)(C), which requires the District Court to accept in whole or reject in whole the proffered plea agreement.

Defendant got the benefit of his bargain with the Government. The Government got the benefit of its bargain with Defendant. The Court DENIES Defendant's motions to reduce his sentence and void the removal provisions of his plea agreement.

SO ORDERED.

**s/ WFK**
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 9, 2024
Brooklyn, New York

25